## DOLPHUS QUINTON v. STATE.

No. A-8301.   March 12, 1932.
(9 Pac. [2d] 51.)

J. M. Roberts, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called

defendant, was convicted in the district court of Pittsburg county of the crime of murder, and his punishment fixed by the jury at imprisonment in the state penitentiary for life.

The information charged that defendant on the 5th day of April, 1931, murdered one George Smoot, a young man about seventeen or eighteen years of age, at a dance at the home of one Will Strain, in Pittsburg county; that defendant killed Smoot by stabbing him with a butcher knife; that Smoot was out on the screened porch, where there was no light; that defendant got a butcher knife in the kitchen of the house and stepped out on the porch to a bench where Smoot was sitting or leaning, and told Smoot to raise up; that, as soon as Smoot raised from the seat, defendant struck him with the knife, severing an artery; that Smoot died shortly afterwards from the wound.

Defendant testified that he did not know Smoot and had no grudge against him; that he was so drunk he did not know what he was doing; that he did not remember anything after he left the dance floor, until somebody told him he had killed the boy.

It is apparent from this record that the defendant became voluntarily intoxicated. There is nothing in the evidence that entitles him to an acquittal. The most he could be entitled to under his own testimony would be a conviction for manslaughter in the first degree. The trial court instructed on murder, manslaughter in the first degree, the presumption of innocence, reasonable doubt, and told the jury they might acquit defendant.

Defendant first complains of the instructions of the court.

Most of the instructions complained of incorporate the statutory provisions relative to murder and manslaughter. If they are fundamentally wrong, then the statutes themselves are fundamentally wrong.

Instructions No. 5, 6, and 7 complained of are sustained by Culpepper v. State, 4 Okla. Cr. 103, 111 Pac. 679, 31 L. R. A. (N. S.) 1166, 140 Am. St. Rep. 668, and Wadsworth v. State, 9 Okla. Cr. 84, 130 Pac. 808.

Defendant made no objection to any of the instructions, nor saved any exceptions to the giving of the same, nor did he tender any other or different instructions he desired the court to give.

This court has repeatedly held that an objection that the court's charge in a criminal case was on general lines and consisted of general propositions of law is unavailable on appeal, where the defendant offers no specific instructions. Ralston v. State, 16 Okla. Cr. 634, 185 Pac. 831; Howard v. State, 39 Okla. Cr. 336, 265 Pac. 149; Sanders v. State, 46 Okla. Cr. 293, 287 Pac. 846.

In Boutcher v. State, 4 Okla. Cr. 576, 111 Pac. 1006, 1007, this court said:

"Where no exceptions are reserved to the instructions of the court, none except fundamental errors will be considered." Birdwell v. United States, 10 Okla. Cr. 159, 135 Pac. 445; Russell v. State, 17 Okla. Cr. 164, 194 Pac. 242; Prince v. State, 53 Okla. Cr. 175, 9 Pac. (2d) 53.

The instructions given by the court on its own motion fully covered the law of the case, and were more favorable to the defendant than his own evidence warranted.

Defendant next contends that the trial court erred in refusing to permit Dr. H. A. Wilson, a duly qualified chemist, a witness for the defendant, to make a chemical

anaylsis of the blood on the butcher knife used in the killing, for the purpose of determining whether or not it was human blood.

There was no issue in the case that the knife introduced in evidence was not the knife used in the killing. The state offered no evidence to show that the blood on the knife was human blood. What the state proved was that the knife introduced in evidence was used by defendant in the killing; and that it was in the same condition it was at the time it was taken from Strain's house, immediately after the killing. There was no contention, so far as the evidence in this case is concerned, but that the deceased, George Smoot, was killed with the butcher knife, and that this defendant killed him. Whether or not the stains of blood on the knife were human blood was immaterial. The court was right in its ruling, for the reason that the knife had been introduced in the preliminary examination, and defendant had had ample opportunity between the time of the preliminary and the time of trial to have an analysis made of the stains on the knife, if he had so desired. Dr. Wilson testified it would take from four to twenty-four hours and maybe longer to make the analysis. No request was made to make this analysis before the trial. The trial was almost over when Dr. Wilson was introduced as a witness for the defendant. If Dr. Wilson had testified that the stains on the knife were not stains of human blood, it would have proved nothing so far as the guilt or innocence of defendant was concerned, since there was no question but what defendant killed deceased with this particular knife.

Considering the entire record in connection with the assignment of error, it is evident that the defendant was guilty of laches in not having this analysis made, if he de-

sired one to be made, before the trial commenced, and that no prejudice could have resulted to the defendant from the action of the trial court in denying his request to have an analysis made of the stains on the butcher knife.

Defendant next contends that the trial court erred in permitting George Railey, a deputy sheriff, to testify in rebuttal after the case had been closed.

This witness was called by the state merely for the purpose of showing that the knife in question was offered in evidence at the preliminary hearing and was in the same condition at the time of trial as it was when offered at the preliminary.

This court has repeatedly held that the trial court may, in its discretion, permit either the defendant or the state to introduce further evidence after the case is closed. Dickinson v. State, 3 Okla. Cr. 151, 104 Pac. 923; Winfield v. State, 18 Okla. Cr. 257, 191 Pac. 609; Ivey v. State, 21 Okla. Cr. 182, 206 Pac. 257.

It is further contended that the trial court erred in admitting testimony to the effect that the deceased was a peaceable, unoffensive person. An examination of the record shows that the trial court admitted testimony to show that at the time of the killing the deceased was unarmed; that he had made no demonstration of violence toward the defendant nor any threats of any such violence. This evidence was proper as a part of the res gestae; it always being relevant to show the circumstances under which the killing took place.

Finally, it is contended that the evidence is insufficient to support the verdict. This contention only raises

the question of whether the evidence is sufficient to show premeditated design to kill.

The court instructed the jury that, before the defendant could be convicted of murder, it was necessary to show such premeditated design on his part. Under the defendant's testimony, he might have been convicted of manslaughter in the first degree. That issue was also submitted to the jury by proper instructions. By their verdict the jury found that defendant was not so drunk but that he knew what he was doing.

Section 1512, C. O. S. 1921, provides:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition."

Voluntary intoxication, such as is revealed by this record, is no excuse for murdering an innocent person. Not only does the law infer that the defendant intended the natural consequences of his act, but the defendant's voluntary statement, made after the killing, together with the evidence of the state, is sufficient to establish an intent supporting the verdict of murder.

There being plenty of evidence to support the verdict, and, the trial court having properly submitted the law of the case to the jury, the judgment is affirmed.

DAVENPORT, P. J., concurs. EDWARDS, J., absent; not participating.