## SHAUL v. THE COLORADO FUEL & IRON COMPANY

(No. 1837; March 13, 1934; 30 Pac. (2d) 478)

For the appellant, there was a brief and oral arguments by *William E. Mullen* of Cheyenne, and *D. C. McGrew* of Denver, Colorado.

For the respondent, there was a brief by *Ray E. Lee,* Attorney General, *O. O. Natwick,* Deputy Attorney General, and *Wm. C. Snow,* Assistant Attorney General, all of Cheyenne, and oral argument by *Mr. Lee.*

*William E. Mullen* and *D. C. McGrew* in reply.

BLUME, Justice.

This is a Workmen's Compensation case. Arthur W. Shaul, the workman herein, was employed by the Colorado Fuel & Iron Company, appellant herein, at its mines at Sunrise, Wyoming. On January 10, 1931, he was lowering coal from the surface through a shaft to the second level of the mine by the use of a hand windlass, which in some manner struck him on the left cheek, causing an apparently severe injury. Nobody seems to have witnessed

the accident and the workman herein stated that he did not know how it happened. He was taken to the hospital at Sunrise conducted by the employer, remained there for about a week and then was sent to his home. There is some evidence in the case that he was unconscious or only semiconscious during the time that he was at the hospital, but a number of witnesses testified to the contrary. Later he was sent to the Corwin Hospital, also operated by the employer at Pueblo, Colorado, where he received further examination and treatment for about eight days. He was then returned to his home at Sunrise, the employer's physician at Pueblo reporting that he should be able to resume work in about six weeks. After returning to his home the workman was looked after by Dr. Graham, the employer's physician at Sunrise. He, on September 1, 1931, made a report that the workman had fully recovered. Previous thereto, and on January 30, 1931, the workman had reported the accident, stating that he had suffered temporary total disability as far as could be determined at that time. The employer also had filed a report, and the workman had been, by orders of the court entered at various times, allowed the sum of $75 per month, taking into consideration that he had, at the time of the accident, two minor children. On September 17, 1931, the court, reciting that claimant had recovered so as to be able to engage in gainful occupation, made an order granting him full and final compensation for his injuries in the sum of $203.22. This was apparently done pursuant to the report of Dr. Graham mentioned above and pursuant to an informal letter of the attorney for the employer. In any event, the workman appears not to have been present or to have known

anything about it. On October 10, 1931, the employee filed what is called an application and claim for award under the compensation law, without purporting to be any amendment to his prior claim, asserting therein that the injury had resulted in permanent disability. On November 12, 1931, an amended claim for compensation was filed on behalf of the workman, alleging that the latter had suffered severe, lasting and permanent injury. A hearing on the application was requested. Subsequently, and on December 26, 1931, the employer filed objections to the amended claim for compensation, alleging that the workman had fully recovered and that no sufficient facts were stated to constitute a ground for the vacation of the order of the court made on September 17, 1931, and alternatively asking that the court direct the appointment of physicians licensed under the laws of the State of Wyoming to examine the workman. On December 31, 1931, the court overruled the objections filed by the employer and appointed Doctors George P. Johnston and Walter M. Lacey to examine the workman on behalf of the employer. Subsequently, on October 24, 1932, the employer filed a motion to dismiss the amended claim for compensation on the ground that the court had no jurisdiction in the case on account of the fact that a final order of award had been made on September 17, 1931, and an objection to the jurisdiction of the court on the same ground was also made herein on behalf of the employer at the beginning of the trial subsequently had. That trial took place on March 4, 1933, and the court awarded to the workman an additional compensation of $2000, payable at the rate of $60 per month, on the finding that the injuries sustained by the workman were such as to

result in permanent partial disability of the workman to the extent of 50 percent of his earning capacity. From this award the employer has appealed.

1. The first point urged herein is that the court had no jurisdiction to open the case for further award after the court had entered its order of September 17, 1931. Midwest Refining Co. v. George, 41 Wyo. 55, 281 Pac. 1085, is relied upon. The injury of the workman in that case was sustained in 1924. The employer and employee entered into an agreement which resulted in a final judgment on February 18, 1927, the employer and employee agreeing for the purpose of settlement that the workman has sustained permanent total disability to the extent of 62½ per cent, and that it should be in full of all claims and demands against the employer unless the workman's condition should steadily grow worse. That case should, perhaps, be read in connection with an amendment made to the workmen's compensation law by Ch. 111 of the Session Laws of 1927, effective April 1, 1927, (now Sec. 124-120, Rev. St. 1931). That amendment was not applicable in the George case, involving as it did a final judgment rendered prior to April 1, 1927. The amendment is as follows:

"Provided, however, that the court making such award shall retain jurisdiction of the same until said award shall have been fully paid, with power to modify or change the amount of the award to conform to any change in the condition of the injured workman, and shall have power at any time during such period upon application and hearing with notice to the employer and a showing of the necessity therefor to order all or any part of the unpaid balance of the award to be paid to the injured workman as a lump sum."

There are a number of cases which hold that an injured workman's condition always remains open to inquiry and does not become res judicata. Spooner v. County of Beckwith, 183 Mich. 323, 149 N. W. 971; Peter etc. Mining Co. v. Pringle, (Okl.) 9 P. (2d) 51; Oil Co. v. Robinson, (Okl.) 11 P. (2d) 259; Williams v. Thompson, 203 N. C. 717, 166 S. E. 906; Husted v. Brown Timber Co., (Ida.) 17 P. (2d) 927. The rule announced in these cases is based upon a statute providing generally that any award made in a workman's compensation case may be reopened when a change occurs in the condition of the workman. The amendment to our statute quoted above is in the clause providing for compensation for partial total disability, and perhaps applies only if some previous award for partial disability had been made. It may, however, be a fair question, whether it was not intended to apply to any award less than that for permanent total disability. It is not necessary to decide the point for the reason hereinafter shown.

It will be noted that the applications in which permanent disability was claimed were filed in October and November, 1931. The objections thereto were filed December 26, 1931. The court's order overruling the objections of the employer was made on December 31, 1931. That order recited that no final order had ever been made in the case and that the amended claim was before the court for consideration and disposition. The order may, therefore, be treated according to its effect, namely, as one setting aside the judgment of September 17, 1931, in so far as that purported to be final. Now there is only one term of court in Platte County, Wyoming, commencing on the first Monday in February of each year. The order of December 31,

1931, therefore, was made during the same term in which the judgment of September 17, 1931, was entered. It is settled in this state that during the term the court has the power to set aside a judgment entered during the same term, with the restriction only that the power be exercised within a sound discretion. Mitter v. Black Diamond Coal Co., 28 Wyo. 439, 206 Pac. 152; McGinnis v. Beatty, 28 Wyo. 328, 204 Pac. 340. In 34 C. J. 207 that rule is stated as follows:

"A court has full control over its orders or judgments during the term at which they are made, and may, upon sufficient cause shown, in the exercise of its sound discretion amend, correct, revise, supplement, open or vacate such judgments. This was the rule at common law, and it prevails in almost all jurisdictions. Unless previously adjourned sine die, every term continues until the beginning of the next for the purpose of this rule."

In 15 R. C. L. p. 688, it is said:

"All courts of record have inherent power to vacate or set aside their judgments or orders during the term at which rendered. This is a power of daily exercise by the courts, and its existence within proper limitations of time and propriety cannot be questioned; it is based upon the substantial principles of right and wrong, to be exercised for the prevention of error and injury, and for the furtherance of justice. Not only may a court set aside a judgment on application therefor, but in proper cases it may take such action on its own motion."

It is conceded in the case at bar that the workman was not present at the time that the judgment of September 17, 1931 was entered, and in fact knew nothing about it until subsequently. Hence there can be no question of abuse of discretion when the court set it aside. The contention of the employer heretofore discussed must accordingly be overruled.

2. The employer maintains that the judgment of the court is not supported by substantial evidence. We think, however, after carefully reading the record in the case, that there is merely a question of conflict of the evidence presented and a finding based thereon cannot, according to a well known rule, be disturbed by this court. We think this to be true notwithstanding the fact that certain pictures of the movements of the workman were exhibited to us by means of a motion-picture machine. The employer's contention, if true, would require us to entirely ignore the testimony of Dr. McLellan, who testified that though he at first suspected that the workman was malingering, he changed his mind after making various tests, and that in his opinion he is permanently and totally disabled, due to a cerebral fracture, with a hemorrhage into the cerebellum. The trial court, it is true, did not accept the view that the workman was totally and permanently disabled, but we do not believe that we can, on that account, reject the testimony of the witnesses in its entirety, or conclude that the trial court did so. Dr. McLellan was not the only witness in the case, and the other evidence doubtless caused the court to accept his opinion only in part. There can be no denial that the injury received by the workman on January 10, 1931, was a severe one. He was not considered able to work for the period of nearly nine months, even by the physicians of the employer. He claims that his right hand is practically insensible to heat or cold; that he cannot walk normally, and that exertion for any length of time weakens him so that he is unable to do any work and affects his ability to walk normally. His gait was described by Dr. Bluemal as a sort of a trot with a short stride—an unusual gait which

he had never seen before or since. The workman testified that this gait resulted from the injury in January, 1931, and had not become better at the time of the trial, which was in March, 1933. He was to a material extent corroborated by his wife. Furthermore, he was asked to take a walk in the court room at the time of the trial in this case, which he did, giving the trial court a better opportunity than we have had to determine whether or not the workman was malingering. In this walk was exhibited the defect above mentioned.

Dr. Bluemal, an eminent physician of Denver, examined the workman, and made various tests. These led him to believe that the workman was malingering. Two detectives were hired by the employer to observe the workman, and take pictures of his movements. They testified, or left the inference, that at times the workman walked normally, but that at other times, when he knew that he was being observed, he exhibited the foregoing defect in his walk. It was shown that the workman at times was able to lift heavy weights as great as fifty pounds or more. Dr. McLellan testified that the workman might be able to do that after he had rested for some time, but not otherwise. Two witnesses testified that the gait exhibited in the court room was the workman's usual gait before the accident. But other witnesses stated that to be his usual gait only after the accident, and the witness Kinch testified that at one time he saw a picture taken of the workman, and that at that time he walked the same as he did in the court room. To refer to the testimony in greater detail could not subserve any good purpose. We have not been able to come to the conclusion that the judgment of the trial court is not sustained by any substantial evi-

dence.

In this connection we should make reference to another point. When the employer filed objections to the amended claim herein, it asked that if the court should overrule the objections, it then require the workman to appear at Cheyenne, at a time to be fixed by the court, and submit himself for examination by two competent physicians, licensed under the laws of Wyoming. The court, as already stated, overruled the objections and appointed two physicians for the purpose heretofore stated, fixing the time and place at which the workman was to appear. The order recites that the employer had selected Dr. G. P. Johnston and Dr. Walter M. Lacey as such physicians, and they were accordingly appointed. It appears in the record that the examination was made as requested. But no report of such examination was made nor were these physicians used as witnesses. The attorney general accordingly contends that an inference adverse to the employer should be drawn from these facts, citing Hines v. Sweeney, 28 Wyo. 57, 201 Pac. 165, 1018.

The application for the appointment of the physicians was doubtless made pursuant to section 124-133, Rev. St. Wyo. 1931. That section provides that when a workman has been allowed compensation for temporary total disability, he may be required, at the request of the employer, to submit to a medical examination by a physician licensed in this state, and that the workman may have a physician of his own selection present at the examination, leaving the inference that the other or others shall be selected by the employer. The statute further provides that the purpose of the examination shall be to determine whether the workman has recovered so that his earning power at any kind of

work is restored, and it then proceeds:

"If it be agreed that the workman has recovered so that his earning power at any kind of work is restored, the fact shall be reported by the employer and said physician to the judge of the district court who made the award in the first instance, or if there be a dispute as to the recovery of the workman and his restoration to earning power, it shall be likewise reported to said judge, by filing a statement in either case in the office of the clerk of the district court of the county where the award was made, and the matter shall be disposed of in such manner as said judge may deem proper under the facts."

It may be noted that the statute requires a report to be made to the court not only by the physician, but also by the employer. No report whatever was made in the case at bar. The physicians were selected by the employer, and it would seem that they would have made a report if they had been requested to do so. No report having been made, even by the employer, the inference in the absence of an explanation, is reasonable, we think, to say the least, the examination disclosed nothing in favor of the contention of the employer. We need not decide what, if any, further inference would be permissible, or what explanation would overcome any adverse inferences.

Finding no prejudicial error in the record, the judgment of the trial court is affirmed.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.