HARRY ARNOLD, ALBERT OLEFFE, ROY PRICE, NORMAN D. HODGES, JOHN E. MARTIN and ROBERT JEFFREY,

*Plaintiffs in Error,*

vs.

THE STATE OF WYOMING,

*Defendant in Error.*

(No. 2750; January 4th, 1957; 306 Pac. (2d) 368)

446

For the plaintiffs in error the cause was submitted upon the brief of Goppert & Fitzstephens of Cody, Wyoming, and oral argument by Mr. Ernest J. Goppert.

For the defendant in error the cause was submitted upon the brief of George F. Guy, Attorney General, and Arthur F. Fisher, Assistant Attorney General, both of Cheyenne, Wyoming, and oral argument by Mr. Fisher.

448

## OPINION

Mr. Justice Harnsberger delivered the opinion of the court.

At the time of all occurrences, with which these proceedings are concerned, the appellants were serving sentences in the Wyoming State Penitentiary at Rawlins, Wyoming, which had been previously imposed upon them for the commission of crimes and for which they had theretofore been regularly convicted, sentenced and committed to that institution. Upon an information filed in the district court of Carbon County, Wyoming, against Harry Arnold, Albert Oleffe, Roy Price, Norman D. Hodges, John E. Martin and Robert Jeffrey, charging them jointly with the crime of felonious assault with intent to commit murder in the second degree, all defendants were tried together and the defendants Arnold, Oleffe and Hodges were convicted by the jury of the crime of assault and battery, and defendants Price, Martin and Jeffrey were acquitted. Thereupon, the court pronounced its "Judgment and Commitment", in which it was ordered, adjudged and decreed that Price, Martin and Jeffrey "be and they hereby are acquitted of the charges laid herein", and defendants Arnold, Oleffe and Hodges were respectively adjudged guilty of the crime of assault and battery and were respectively sentenced "to pay a fine of $100.00 each, and costs of prosecution taxed at $904.70, and that they, and each of them respectively be and they hereby are remanded to the custody of the Sheriff of Carbon County, Wyoming who shall forthwith return said Defendants together with said Defendants so acquitted into the custody of the Warden of the Wyoming State

Penitentiary situated at or near the City of Rawlins, in the County of Carbon and State of Wyoming wherein said Defendants shall be so held and detained until they and each of them shall have completed serving their respective sentences upon convictions heretofore imposed upon them respectively by Courts of competent jurisdiction in the State of Wyoming, and that upon the conclusion of the serving of their respective sentences by the Defendants Harry Arnold, Albert Oleffe and Norman D. Hodges, they and each of them respectively shall be delivered by the Warden of the Wyoming State Penitentiary to the Sheriff of Carbon County, Wyoming upon the request of the latter therefor, whereupon said respective Defendants Harry Arnold, Albert Oleffe and Norman D. Hodges shall thereupon be respectively confined not less than 5 months and 25 days nor more than 6 months in the jail of the County of Carbon, and State of Wyoming."

An exception to this judgment and commitment being saved by the convicted defendants, they moved the court to retax costs and to amend and vacate the "Judgment and Commitment" because (1) there was no authority to impose an indefinite sentence upon conviction for misdemeanors (2) the costs were improperly and illegally taxed; (3) the costs were taxed against each of the convicted defendants without proviso that if such costs were paid or served by one or more of those defendants, the costs would be released as to the other or others; (4) the execution of the sentences of confinement were deferred and delayed until after the completion of their serving sentences in the Wyoming State Penitentiary at or near the city of Rawlins, Wyoming, which had theretofore been imposed following their conviction and sentencing for other crimes.

Although the jury found Price, Martin and Jeffrey not guilty of the crime charged and the judgment and commitment expressly acquitted them (to which judgment they took no exception), they also filed their joint motion to amend the judgment and commitment.

It was stipulated that a certificate of the clerk of the district court, which appears as being filed in the action, "be received as evidence of the facts set forth and detailed therein on any Motion to retax costs or to amend the Judgment and Commitment" and that such facts are true. This certificate contains a statement of the $904.70 assessed as costs by the court's judgment as follows:

| | |
|---|---:|
| Witness fee paid Elaine McGough $ | 5.00 |
| Witness fee paid Ben Reeves | 52.60 |
| Service two Court Bailiffs (a) $5.00 per day for 4½ days | 46.00 |
| Mileage and perdiem paid to all jurors on jury panel and for trial jurors who served on petit jury during the trial of this criminal action as per detailed list attached marked Exhibit "A" | 801.10 |

TOTAL COURT COSTS ASSESSED ....$904.70

The certificate also had attached an exhibit listing the names of all jurors who attended during the empaneling of the jury and at the trial of the defendants, together with detail of days served, the per diem, the mileage and totals, the overall of which amounted to the sum of $801.10.

The motion of Price, Martin and Jeffrey was overruled and exception allowed.

The motion of the convicted defendants was granted as to its first ground, and the judgment and commitment was corrected and modified by what professed to be an order nunc pro tunc. This order deleted from

the original judgment and commitment the words which made the term of imprisonment indefinite and, by such deletion, left the sentence of imprisonment to be for the definite period of six months. The balance of the motion was denied and exception was allowed.

All six of the defendants have brought their complaints to this court by a single petition in error and have accompanied the record filed herein with a single bill of exceptions, which has been properly allowed and signed by the presiding judge.

The state has filed its motion to dismiss this proceeding because there is but one bill of exceptions, rather than a separate bill of exceptions for each of the petitioners in error, and asserts this failure is jurisdictional and fatal to the appeal. In support of its position the state has submitted several cases from Georgia and one from Pennsyvlania. See Western Assurance Co. v. Way, 1896, 98 Ga. 746, 27 S.E. 167; Askew v. Powell, 1923, 30 Ga.App. 244, 117 S.E. 769; Fillingame v. State, 1921, 27 Ga.App. 764, 109 S.E. 916; Holtzendorf v. State, 1949, 78 Ga.App. 801, 52 S.E.2d 624; Fortson v. State, 1932, 45 Ga.App. 218, 164 S.E. 90; Commonwealth v. Blose, 1947, 160 Pa.Super. 165, 50 A.2d 742. It is claimed these cases hold that a separate bill of exceptions must be provided for each petitioner in error. Aside from the fact that in the cited cases there were two or more separate and distinct actions which had merely been consolidated for trial, whereas we here have several defendants who were jointly charged with the commission of the same identical crimes and who were all tried together, we are not disposed to follow a ruling which could serve no good purpose and would result in encumbering the record with six copies of an identical bill of exceptions. We also take notice

that counsel for the six appellants has filed herein a dismissal of the appeal taken by two of the three convicted defendants against whom the judgment and commitment of the court was imposed.

The appeal of the three acquited defendants is based in their claim that the judgment of the court should have decreed that they be discharged. The contention is without merit, if for no other reason than that where there is a verdict of not guilty, it is unncessary that there be a formal judgment of acquittal, since the record and the case against such acquitted defendants ends with the verdict of acquittal. See 24 C.J.S. § 1558, p. 19. It was said in Mills v. McCoy, 4 Cow. (N.Y.) 406, 410:

"The record ends with the finding of the jury, *not guilty*. This works a discharge in law, and in fact; for the moment this verdict is pronounced, the defendant, if in prison, is set at large, and if out on bail the recognizance is considered as *ipso facto* void; and no discharge is ever, in practice, entered. No entry is usual, upon the main record, beyond the verdict of not guilty; and it is, *prima facie*, evidence of an acquittal and determination of the prosecution, within the words of the declaration."

As to the appeal of the three acquitted defendants, the judgment of the lower court is therefore now affirmed.

This leaves for our consideration the single appeal of the defendant Hodges.

This court has repeatedly announced that the function of a bill of exceptions is to bring before this court proceedings or evidence which do not otherwise appear in the record. Underwood v. David, 9 Wyo. 178, 180, 61 P. 1012; Grover Irr. & Land Co. v. Lovella Ditch, R. & Irr. Co., 21 Wyo. 204, 221, 131 P. 43, 46; Middleton v. State, 34 Wyo. 102, 110, 241 P. 715,

718; In re Austin's Estate, 35 Wyo. 176, 180, 246 P. 459.

There would be little justification for our now granting the defendant in error's motion to dismiss this proceeding as the bill of exceptions in the record is sufficient to enable this court to examine into the alleged errors which impel Hodges to seek relief, namely, (1) imposing of an indeterminate sentence, (2) re-sentencing of appellant after end of the term, (3) deferring execution of sentence, (4) over-taxing of costs, and (5) failure to make proper proviso concerning satisfaction of costs. The motion of the defendant in error to dismiss the appeal for failure to file separate bills of exception is therefore denied.

There has also been filed herein an application by plaintiffs in error, Arnold, Oleffe and Hodges, the convicted appellants, for an order to suspend sentence and fix bond. This motion now remains as the motion of Hodges only and will be disposed of by our decision upon the merits of his appeal.

In order to understand our discussion of the errors assigned, certain facts should be noted. The record discloses that the court's "Judgment and Commitment", which contained the sentence imposed, was filed and entered on December 12, 1955. On December 22, 1955, this plaintiff in error filed his "Motion to Retax Costs And To Amend And Vacate Judgment And Commitment". On February 18, 1956, the court signed an order sustaining the grounds of plaintiff in error's motion which attacked the indeterminate sentence and correcting the judgment and commitment so as to impose a definite sentence, but denying the other grounds of plaintiff in error's motion. This order was filed and entered on February 20, 1956, which day was the first day of the next term following the term in

which the judgment and commitment had been entered and was also a day more than sixty days following the entry of the judgment.

We agree with appellant that the court was without authority to impose an indeterminate sentence upon his conviction of a misdemeanor as our statutes make no such provision. However, that bare question is, in a sense, moot before us, as the district court sustained plaintiff in error's motion to amend that portion of its judgment and commitment. The real gist of plaintiff in error's complaint is patently, not because the lower court agreed with him that the original sentence was improper, but because after so holding, the court proceeded to impose a sentence of imprisonment for a definite period, the length of which was unsatisfactory to the appellant and because he now claims that even if the definite sentence was properly imposed, he has already served that sentence by having been incarcerated in the state penitentiary ever since being so sentenced and for a period in excess of the sentence. This contention is made in the face of the fact that the penitentiary imprisonment was by virtue of a prior sentence following conviction for a previous felony. The plaintiff in error attempts to justify his position by claiming the lower court lacked authority to defer the commencement of its sentence for the misdemeanor until after the completion of the felony sentence which was being served at the time of his conviction of the misdemeanor. In other words, it is claimed that the sentence to jail for the misdemeanor ran concurrently with the prior sentence to the state penitentiary for a felony and that the misdemeanor sentence was executed by plaintiff in error's confinement in the state penitentiary. Furthermore, plaintiff in error says that as the court's order sustaining his own motion to amend the judgment and commitment was

not made until February 20, 1956, which date was after the end of the term in which the erroneous judgment was entered, the portion of the sustaining order which deleted the improper words, so as to make the sentence definite, was beyond the court's jurisdiction to make. The plaintiff in error attempts to liken his motion to vacate and amend to a motion for new trial and, upon that premise, draws his conclusion that as more than sixty days had passed following December 12, 1955, the date of entry of the judgment and commitment, his motion filed December 22, 1955, was denied sixty days thereafter, which time would be prior to February 20, 1956, the date upon which the court entered its nunc pro tunc order sustaining the motion in part by virtue of the provisions of § 3-3404, W.C.S. 1945, which says:

"Motions for new trial shall be determined within sixty days after the rendition of judgment, and if not so determined shall be deemed denied, unless continued by order of the court, or by stipulation."

From this plaintiff in error reasons that the court's later order, entered February 20, 1956, sustaining his motion in part, and in effect resentencing plaintiff in error, was of no avail. No authority for this last contention has been produced and we cannot extend the import of the statute's intendment beyond its plain words. A new trial was not asked but rather there was sought the mere exercise of the court's authority to correct an error in its judgment.

As the penalty authorized by our statutes upon conviction for assault and battery is a fine of not more than $100, to which may be added imprisonment in the county jail not exceeding six months, plaintiff in error's complaint that the corrected sentence of imprisonment was for the maximum term is not well taken. The length of the prison sentence, within the

limit set by the statute, was entirely within the sound discretion of the court. § 9-209, W.C.S. 1945.

The claim that the appellant has already served his sentence of imprisonment by confinement in the state penitentiary is also without merit, first because a sentence to the county jail is not executed by incarceration in the state penitentiary and, second, because we find the court did have authority to defer the execution of its sentence for the misdemeanor until the completion of the sentence then being served by plaintiff in error in the state penitentiary . For this holding there is ample authority.

In 15 Am.Jur. § 470, p. 126, it is said:
"There is no doubt that a court may impose a sentence to commence upon the termination of another sentence imposed by another court unless a statute prohibits it. * * * "

We have no such prohibitory statute.

In 24 C.J.S. § 1581(e), pp. 107, 108, ample authority is given for the following statement:

"A sentence which imposes successive terms of imprisonment, or which imposes a term of imprisonment to begin at the expiration of a prior sentence then being served, or which directs that the imprisonment imposed shall commence at the expiration of a specified sentence in another case or at once if such sentence is suspended, reversed, or a new trial granted, is not void for indefiniteness or uncertainty, since it · is as certain as the nature of the matter will permit; and this is true, even though the prior sentence then being served is under an indeterminate sentence law, so that the exact time such sentence will terminate cannot be definitely ascertained. It may be uncertain when it is imposed, but it will be made certain by the event, for, if the prior imprisonment is shortened by reversal or a pardon, the sentence of subsequent punishment then takes effect in the same mode as if the prior term had expired by the natural lapse of time * * *."

Perhaps the matter is more explicitly stated in 16 C.J. § 3224, p. 1370:

" * * * where a convict is serving a term of imprisonment under a prior sentence at the time of a second conviction, sentence may be pronounced to begin at the expiration of the term he is serving, even though the prior sentence was imposed by another and a different court in the state."
and, in the same volume, 16 C.J. § 3225, p. 1371, it is said:

"Where a prisoner during an unexpired term of imprisonment commits a crime, he may be punished therefor and sentenced to a term of imprisonment to commence on the expiration of his present term."

See also Ex parte Lamar, 274 F. 160, 24 A.L.R. 864; State v. Finch, 75 Kan. 582, 89 P. 922; People ex rel. McCarthy v. Ragen ,389 Ill. 172, 58 N.E.2d 872.

Another very clear statement on the subject is made in 18 C.J.S. § 8(b), p. 108:

"As has been quoted from the Corpus Juris text, the idea that, because a convict is under many disabilities, he may with impunity commit crime as he has opportunity, is untenable. Hence, in the absence of special statutory exceptions, it is the general rule that a convict, although serving his term, may be tried and sentenced for a crime committed either prior or sub-. sequent to the conviction under which he is enduring punishment; and the fact that the convict must remain, during the trial, in the custody of an agent of the jurisdiction in which he was convicted is no bar to the prosecution.

"So, if a convict while serving his sentence commits, or is convicted of, another offense, he may be tried and sentenced to a term in addition to his original sentence, which additional sentence may either commence at the expiration of his present one, or be served first, followed by the unexpired portion of the original sentence * * *."

But plaintiff in error also says the Order Nunc Pro Tunc filed February 20, 1956, sustaining plaintiff in error's motion to vacate and amend its judgment and commitment with respect to the indeterminate sentence, and amending the judgment so as to make the sentence definite, was without force or effect because that order was made after the term in which the original judgment was entered.

This position is rendered somewhat insecure by the fact that it was the appellant's own motion to vacate and amend the original sentence which succeeded. It is at least doubtful if he should now be permitted to say the original sentence which he attacked was valid and that the re-sentence was invalid. See 24 C.J.S. § 1588, p. 118; People ex rel. Warhaftig v. McCann, 126 Misc. 612, 214 N.Y.S. 447. However, we will give the point our consideration.

Before discussing the merit of the matter, it might be well to mention that while both parties, as well as the court, have referred to the order in question as an "Order Nunc Pro Tunc", that is a misnomer in this instance. The record shows the original judgment and commitment, pronounced by the court, was truly and correctly recited in the written judgment and commitment entered. The nunc pro tunc amendment or correction of a court's order or judgment is limited to cases where it is necessary to make the entered order or judgment speak the truth. The "now for then" entry is not proper or even permissible to correct judicial errors, judicial omissions or to change the judgment from that judgment which was actually rendered. See 49 C.J.S. § 258, p. 473.

There is little, if any serious question but that, in the absence of a statute to the contrary, a court of general jurisdiction, such as a district court of this

state, has full control over its orders and judgments during the term at which they are made, and it may, in the exercise of its sound discretion, amend, correct, revise, supplement, open or vacate the same. The decisions of this court are in harmony with this rule. See State v. Scott, 35 Wyo. 108, 247 P. 699, 708; Sioux City Seed Co. v. Montgomery, 42 Wyo. 170, 291 P. 918; Shaul v. Colo. Fuel & Iron Co., 46 Wyo. 549, 30 P.2d 478; Book v. Book, 59 Wyo. 423, 141 P.2d 546.

However, after a term expires, this absolute right of the court comes to an end and unless statutes otherwise provide, the general rule is that after a term a court may not alter its order or judgment. This rule is subject to some qualification and to certain exceptions among which is one applicable to this case. The exception referred to is in a case where in proper time during the term a proceeding is begun to vacate and amend the order or judgment. In such a case the jurisdiction of the court to act in that proceeding is carried over into the succeeding term. The defendant having within the term timely filed his motion to vacate and amend the judgment, the order of court amending and correcting the judgment in response to the defendant's motion was a valid order notwithstanding it was made at the subsequent term, for it was made pursuant to a proceeding instituted during the term in which the judgment was entered by the defendant. This holding is in accord with what is said in 49 C.J.S. § 230, pp. 438, 439, 440, 441, and cases cited thereunder. In fact the matter has been so decided in previous rulings of this court. In Ramsay v. Gottsche, 51 Wyo. 516, 527, 69 P.2d 535, 538, 539, this court quoted with approval from O'Keefe v. Foster, 5 Wyo. 343, 352, 40 P. 525, 526, where it had said:

" 'A judgment may be carried over the term by a motion to vacate or modify it, filed upon notice at the term at which it was rendered. Such is the case here, as the motion to modify, with due notice thereof, was filed during the term, although not granted until a subsequent term, and this is sufficient to warrant the court to grant the relief at the ensuing term. Black, Judgm. § 310; Goddard v. Ordway, 101 U.S. 745, 25 L.Ed. 1040; Smith v. Best, 42 Mo. 185. As the motion to modify the judgment in the case at bar, with the supporting affidavits, was filed upon due notice to the plaintiff below, at the term at which the judgment was assailed was rendered, the motion by adjournment was carried over the term, and the action of the district court at its following term, in passing upon the motion, must be sustained.' " See also 24 C.J.S. § 1590, p. 122; Smith v. Brown, 135 Fla. 830, 185 So. 732.

This brings us to consideration of the cost matters. It will be remembered plaintiff in error first complains that the assessment included the cost of bailiffs' services, which the bill of exceptions shows to be $46 and, second, he objects that there is charged the per diem and mileage of not only the trial jurors selected to try the case, but also of all jurors who attended during the empaneling of the trial jury, which amounts were similarly shown to be $801.10. Thus plaintiff in error claims that a total of $847.10 of the $904.70 was illegally assessed, leaving the proper amount of costs to be only the sum of $57.60.

As the taxing costs in criminal prosecutions was unknown at common law, we must rely entirely upon our statutes for what, if any, authority there is to tax costs in this case. See 20 C.J.S. § 435, p. 677; 14 Am.Jur. § 107, p. 69. Section 10-1416, Wyoming Compiled Statutes, 1945, provides:

"In all cases of misdemeanors tried before justices of the peace, or the district courts of this state, by indict-

ment or information, in which the defendant may be convicted, the punishment shall be within the discretion of the court, limited as penalties now are by law, except that payment of the *costs of prosecution* may be added to and made a part of the sentence, and the court may in its discretion direct the defendant to stand committed until the sentence, including costs, shall be complied with." (Emphasis supplied.)

Section 9-105, W.C.S. 1945, says:

"Within the limits prescribed by law, the court shall determine and fix the punishment for any felony or misdemeanor, whether the punishment consists of imprisonment, or fine, or both, and when any person is sentenced to imprisonment in the penitentiary, the court shall declare in its sentence, for what period he shall be imprisoned; and in all cases of a conviction of an offense, the court shall render judgment against the defendant for the *cost of prosecution*." (Emphasis supplied.)

No statute nor any decision of this court has come to our attention which determines the items to be included as "costs of prosecution", so we must look elsewhere for enlightenment. Plaintiff in error calls attention to 20 C.J.S. § 454, p. 694, where it is said: "Costs of prosecution do not include the general expense of maintaining a system of courts and administration of justice."

This statement does not provide the whole answer, for it still leaves to be decided just what items are "general expense" and what are not, and we fail to find anything in plaintiff in error's citation of 14 Am.Jur. 69 which points any more certainly to the answer. In 20 C.J.S. § 453, p. 694, we find it said that "The term costs ordinarily includes only items connected with the actual presentation of testimony and the fees of *specified officers*" (emphasis supplied.) but upon examining Commonwealth v. Baughman, 23 Pa.Dist. & Co. 364, the case cited as authority, the

statement loses much of its value here, as the facts which furnished it background were so dissimilar to the one at bar and because the case provides no explanation which identifies the "specified officers." It may be, unless violative of constitutional right, the term "fees of specified officers", could be made to include the fees of the whole jury panel, their mileage and expenses, as well as the fees and expenses of bailiffs and all such expenses be allowed as costs of prosecution, if so authorized by statute. Perhaps this might also be true with respect to the salaries of prosecutors, peace officers, judges, clerk and possibly even all other expenses involved in or incident to the prosecution of a convicted defendant, although, as to such expenses, it might be impossible to make any fair apportionment as certain factors entering into a just allocation are probably incapable of ascertainment. For instance, there would need be separation of the overall costs between the civil, probate and criminal. Then in the criminal field there would be division between the expense required in cases where there were acquittals and those in which convictions were had, to say nothing of the juvenile and incompetency matters which arose from criminal proceedings. Next there would be segregation of expenses of criminal convictions on pleas of guilty or in trial before the court without a jury from those where jury trial was had. Additionally some consideration must be given to the great fluctuation in number of cases handled over different periods as otherwise a jury-convicted defendant might be required to pay the total of the overall expense allocated to the criminal field during a particular period if his was the only prosecution which occurred within that time. Likewise allowance would be necessary for the unascertainable volume of investigative effort which did not

result in prosecution, yet which did require the services of some of such "specified officers" and their facilities. It is difficult to discover any sound reason why the expenses of providing bailiffs should be considered any differently than the expenses of providing clerks, prosecutors or judges. The performance of their respective duties in the administration of justice in the criminal field by either of these officers, is equally a part of the system provided for the fulfilling of that governmental function. This is just as true with respect to the members of the jury panel from which the trial jury is selected. It has also been suggested that to tax as costs the fees and expenses of the jury panel or even those of the trial jurors alone, amounts to coercion and infringes a constitutional safeguard. The right to trial by jury in criminal prosecutions is inviolate and may not be hampered either directly or indirectly. While this does not mean that the right is so entirely without qualifications that a convicted criminal is to be given special privilege not enjoyed by other litigants, it may caution that no one can say with authority what measure of influence would be exerted in certain circumstances, by the prospect that should an accused be convicted upon jury trial he would be required to pay all expenses entailed in providing him with a jury when by pleading guilty he could avoid such payment. Conceivably that might be such a deterrent as would move even an innocent person to plead guilty in some cases and induce him to forego his constitutional right of trial by jury. See Ex parte Coffelt, 93 Okla.Cr. 343, 228 P.2d 199, 204. If we concede, as we are inclined to do, that there is merit in the philosophy that a convicted criminal should not be completely relieved from paying certain items of the overall expense incident to his being successfully prosecuted,

that is a matter for legislative rather than for judicial determination, bearing in mind that courts may ultimately be required to pass upon the constitutionality of any such legislative action. However, it is not necessary to dispose of the question on constitutional grounds at this time and consequently we will not now pass upon that point. We are more disposed to follow holdings of courts of other jurisdictions in this country which have otherwise ruled upon the question. We must, however, make some interpretation of the phrase "costs of prosecution" as used in § 10-1416 of our statutes and apply it to the instant matter.

The United States Circuit Court of Appeals, Eighth Circuit, in Gleckman v. United States, 80 F.2d 394, 403, decided that jury fees, jury mileages, jury bailiffs' fees and expenses are included among the general expenses of maintaining the system of courts and the administration of justice that they are an ordinary burden of government and in the absence of a statute to the contrary, such items may not be taxed against a convicted defendant as costs of prosecution. Other holdings of United States Courts are to the same effect. See United States v. Wilson, 193 F. 1007; United States v. Murphy, 59 F.2d 734; United States v. Hoxie, 8 Alaska 210, 222, 223. The courts of several of our states have reached similar conclusions. As early as 1885, the Supreme Court of Michigan in People v. Kennedy, 58 Mich. 372, 25 N.W. 318, 320, said: "We know of no authority in the circuit courts to add the *per diem* of jurymen to the fine and costs in a case like this. It costs a litigant in a civil cause only three dollars for a jury trial, and certainly it would be monstrous to establish a practice of punishing persons convicted of misdemeanors for demanding what the constitution of the state gives them,—a trial

by jury." In the later Michigan case of People v. Hope, 297 Mich. 115, 297 N.W. 206, 208, the above case was cited and the court observed, "But assessing costs against a defendant for a jury in a criminal case is not permissible under the laws of this State. People v. Kennedy, 58 Mich. 372, 25 N.W. 318. Every person charged with a criminal offense has a constitutional right to a trial by jury. In the opinion written by Mr. Justice Wiest in People v. Robinson, 253 Mich. 507, 235 N.W. 236, 237, he said: '* * * and costs are expenses incident to a prosecution, and not inclusive of any of the expenses of holding required terms of the circuit court.' " In State v. Morehart, 149 Minn. 432, 183 N.W. 960, this statement appears, "We infer that the bill of disbursements is largely made up of officers' fees for summoning jurors and the fees of the jurors themselves. If such is the fact, we have no hesitation in saying that such fees were not taxable against defendant. It has been the policy of the state to treat the expenses of criminal trials as county burdens (Mathews v. Co. Com'rs., 90 Minn. 348-352, 97 N.W. 101) * * *." The Supreme Court in neighboring Colorado, Saunders v. People, 63 Colo. 241, 165 P. 781, in disallowing the taxation of jury fees, mileage and per diem as well as sheriff's fees and mileage, as proper costs of prosecution, said, "In the next place, defendant did not ask for a jury; she did not want a jury; she did not want to be tried at all. There would have been no jury summoned and no trial if she had had her desire. The trial was forced upon her against her will by the prosecution, the Constitution gave her the right of trial by jury, and it was the duty of the county to furnish a jury in the manner provided by the Constitution and laws of the state. * * *" Later in the same court in McLean v. People, 66 Colo. 486, 180 P. 676, 680, held the lower court had erred in

overruling defendant's motion for retaxing costs because there had been included the jury fees, salary and expenses of the bailiffs, and the court thereby relieved the defendant from payment of those items.

We believe the reasoning of these authorities is sound and just and therefore hold, that taxing, as costs of prosecution, the mileage and per diem paid to all jurors on the jury panel and the amounts paid for the services of the court bailiffs, was erroneous. We may as well also say here that even to tax the mileage and per diem of the jurors who served on the trial jury is likewise erroneous.

The final matter to be considered is the appellant's claim that where more than one and less than all defendants are convicted on an information jointly charging them with an offense, the costs of prosecution must be apportioned equally and fairly among all defendants and not adjudged in full against each of those convicted and that some proviso must be included in the sentence that payment of such costs by any one or more of the convicted defendants, releases the remaining defendants from the obligation to the extent of any payment so made.

In the petitioner's brief, it is claimed that inasmuch as three of the six defendants were acquitted, the costs taxed should have been divided so that the state would pay one-half, that the other half should be taxed against the three convicted defendants and that the judgment and sentence, with respect to costs, be modified to that end. Also it is asserted that the modified judgment should provide that satisfaction of the retaxed costs by either one or more of the three convicted defendants, would serve to satisfy the judgment for costs as taxed against the remaining convicted defendants.

The state has substantially conceded the point last mentioned for in its brief it said, "Naturally only one payment for the total costs of prosecuting the three Defendants found guilty can be enforced and upon the full payment being made by one of such three guilty Defendants, the remaining two will be released from liability for such costs upon application for such release," so little more need be said on that subject except to point out that if satisfaction of the costs occurs in any lawful manner, all convicted defendants are released from liability for the same and no application for such release is necessary.

In cases where several defendants are tried together and some are acquitted while others are convicted, there seems to be some difference of opinion as to how costs should be taxed. Among the stronger statements favoring the petitioner's position in this respect is that expressed in a rather old Missouri case, State v. McO'Blenis, 21 Mo. 272, 274, 275, where it was said, "There is no privity between offenders, as in the case of joint contractors, which makes one liable for the costs of the others. * * * Justice, therefore, requires that each delinquent should be liable for his own offences, and that he should not be liable for the costs of prosecuting or defending others." A similar conclusion was reached in Kennedy v. People, 122 Ill. 649, 13 N.E. 213, where it was held that when one of three defendants jointly indicted and tried was acquitted, the two convicted defendants could not be required to pay the cost of prosecuting the acquitted defendant. Also, much to the same effect are the decisions in Barry v. McPherson, 24 Pa.Dist.R. 118, 43 Pa.Co. Ct.R. 61, 13 Just. L.R. 270, 62 Pittsbg.Leg. J. 337, 24 York Leg.Rec. 80, 31 Lanc.L.Rev. 387; Moody v. People, 20 Ill. 316; Murphy v. People, 3

Colo. 147; Searight v. Commonwealth, 13 Serg. & R. 301. (Penn.)

An early qualifying concept appeared in State v. Jolley, 1838, 20 N.C. 110, 112, 32 Am.Dec. 656, the court saying, "* * * where costs can be discriminated each is liable for his or her part of them, and where they cannot be each is liable for the whole."

The state has not seen fit to offer any authorities bearing on the question but apparently anticipate that in the light of our late holding in State v. Faulkner, Wyo., 292 P.2d 1045, 1051, we may be disposed to modify the judgment so as to apportion the costs as the petitioner requests. The Faulkner case is somewhat helpful but it is not conclusive in this matter. In that case there was a single defendant who was charged with multiple offenses but who was acquitted of all but one charge and we held that under those circumstances where there had been acquittals on forty counts and a conviction on but a single count, the lower court should reduce its judgment for costs which had assessed against the defendant the entire cost of prosecuting forty-one charges. It must be remembered, however, that we expressly recognized that there must be an exception to that application of the provisions of § 9-105, W.C.S. 1945, providing for taxation of costs of prosecution when, "* * * the several offenses charged grow out of the same acts or transactions, e.g., §§ 10-712, 10-714, W. C. S. 1945, and in all cases in which a verdict of 'guilty' and of 'not guilty' (or a judgment of dismissal) are based upon substantially the same evidence." In this proceeding in error, there is not before us the transcript of testimony nor of other evidence which was considered by the jury, so it is impossible for us to determine if the same or substantially the same evidence was the basis for the acquittal of some and the conviction of

other defendants. Under such circumstances we have no alternative but to interpret the district court's judgment for costs as implying its finding that the acquittals and convictions were based upon substantially the same evidence.

Ordinarily this court prefers that the district court make such orders, judgments or decrees as may be proper to carry into effect the conclusions reached here, but in this case we are disposed to take notice that the petitioner Hodges commenced the serving of the six months sentence of imprisonment imposed upon him, in the county jail of Carbon County, on the 7th day of July 1956 and that such sentence will be completed on the 6th day of January 1957. Under these particular circumstances it is deemed advisable that this opinion contain the express directions necessary for its own implementation. The portion of the judgment and sentence of the lower court imposing upon the defendant Hodges a fine of $100 and assessing and taxing costs against him in the sum of $904.70, is therefore hereby modified so as to provide that the defendant Hodges be sentenced to pay a fine of $100 and costs of prosecution taxed at $57.60 and that should such fine and costs so imposed upon him be not fully paid at or before the completion of his service of the jail sentence imposed, the defendant Hodges be continued in imprisonment in the County Jail of Carbon County at Rawlins, Wyoming, by the Sheriff of Carbon County, Wyoming, until such fine and costs are paid in full or are otherwise satisfied as may be by law provided. Except as above set forth herein, the judgment and sentence of the lower court is affirmed.

Affirmed as modified.