## Commonwealth v. Giaccio

*John S. Halsted,* for Commonwealth.
*James C. N. Paul* and *Peter Hearn,* for defendant.

GAWTHROP, P. J., January 12, 1963.—Defendant was charged in the above two bills of indictment with unlawfully and wantonly pointing and discharging a firearm at each of two persons. At trial, a verdict of not guilty was directed and returned on bill no. 226, and the jury placed the costs of prosecution on the county. On bill no. 225, the jury returned a verdict of not guilty but ordered defendant to pay the costs. Pursuant thereto, he was ordered to pay the costs forthwith or give security to pay the same within ten days and stand committed until he complied therewith. Having so posted security, thereafter defendant, who was not represented by counsel at or after trial, having refused the court's offer to appoint counsel to represent him, with the assistance of the district attorney's office on request of the court, filed a motion to be relieved of payment of costs on the grounds that imposition thereof upon him was contrary to law, an abuse of the jury's discretion and against the weight of the evidence.

Defendant argued his motion in propria persona and, while the court held the matter under consideration,

counsel entered their appearance for defendant, filed a motion for reargument which was granted, and thereafter ably argued the matter and filed an extensive and well-considered brief. The matter is now before us for decision, and, after careful consideration, the motion must be granted.

Defendant attacks the constitutionality of the Act of March 31, 1860, P. L. 427, sec. 62, 19 PS §1222, on the four grounds that: (1) It is void for vagueness; (2) it improperly delegates legislative power; (3) it violates basic principles of due process of law; and (4) it discriminates against defendants in misdemeanor cases.

Our research and that of counsel has discovered no Pennsylvania decision prior to the first statute on the subject, the Act of 1791, infra, holding that acquitted defendants in criminal cases bore the costs of prosecution, and it appears that the contrary was true at English common law: Stephen, History of the Criminal Law of England, vol. I, pages 498-499; Bishop, New Criminal Procedure, vol. 2, §§1313, 1317. In Commonwealth v. Tilghman, 4 S. & R. 126, however, our Supreme Court in 1818 sustained the validity of the Act of December 7, 1805, 4 Sm. L. 204, permitting imposition of costs on acquitted defendants in misdemeanor cases, and, in so doing, stated that in Pennsylvania "at common law" such a defendant was liable for the costs of prosecution. Apparently no appellate decision has since stated otherwise. Kessler, Criminal Procedure in Pennsylvania, page 235, repeats the same Pennsylvania common law rule, citing Commonwealth v. Johnson, 5 S. & R. 195, and Strein v. Ziegler, 1 W. & S. 259.

Our statute law on the subject has not been entirely consistent as an analysis of it demonstrates. The earliest statute was the Act of September 23, 1791, P. L. 37, 43 and 44, an act to "Supplement the Penal Laws," which declared, inter alia, at page 43, that in cases

where grand juries ignored bills of indictment and, at page 44, where any person was brought before a court and charged with crime and the charge "shall appear unfounded," costs should fall on the county. There followed the Act of March 20, 1797, P. L. 281, the preamble of which recited as its purpose:

"Whereas . . . persons, against whom indictments are presented by the grand inquests . . . are afterwards acquitted by a petit jury . . . And whereas, by the existing laws, a party so acquitted is equally liable to costs of prosecution as if he were convicted, *which operates injustice, and a punishment to the innocent: For remedy whereof, . . . .*" it enacted that if defendant were acquitted by a petit jury of *any indictable offense* the costs should be paid out of the county stock. (Italics supplied.)

Both acts show a clear legislative intent to relieve *all* acquitted defendants of payment of costs, and ". . . changed the odious common law principle which left the accused to pay the costs, whether convicted or acquitted; . . .": Strein v. Ziegler, supra, at 260.

Then followed the Act of December 7, 1805, 4 Sm. L. 204, the act considered in Commonwealth v. Tilghman, supra. Its preamble recited that "the laws obliging the respective counties to pay the costs of prosecutions, in *all criminal cases,* where the accused is or are acquitted, *have a tendency to promote litigation;* inasmuch as they enable restless and turbulent people to harass the peaceable part of the community, with trifling, unfounded, or malicious prosecutions at the expense of the public. . ." (Italics supplied.)

Although its stated purpose was to discourage unfounded prosecutions, its terms went further. Section 1 provided that, except in felony cases, where a grand jury ignored a bill of indictment, it should decide and certify whether the county or the prosecutor should pay the costs, but that in all cases of acquittal by a petit

jury they should determine by their verdict whether the county, the prosecutor, or the *defendant or defendants* should pay the costs. Section 2 provided that where any jury determined that a prosecutor should pay the costs, the court should pass sentence to that effect by committing him to jail until the costs were paid, unless he gave security to pay them within ten days. So, while reciting a purpose of discouraging unfounded prosecutions and relieving the public of the costs in such cases, the act revived the very Pennsylvania "common law" practice of imposing costs upon acquitted defendants which the Acts of 1791 and 1797 had abolished and the latter had declared to be an "injustice" and a "punishment of the innocent." At the same time, it would appear that in felony cases the relief granted by the Act of 1791 continued to apply, as it does today.

Whether the words "or the defendant or defendants" were included deliberately or by inadvertence in the Act of 1805, they were incorporated again in the same language in its reenactment by the Act of 1860, supra, and have ever since been applied in misdemeanor cases. Trial judges, as in this case, have consequently instructed juries in accordance therewith substantially in the language of the Tilghman case. There, the Supreme Court, at page 128, speaking through Mr. Justice Gibson, had said the act was aimed at a defendant ". . . acquitted of actual crime, but whose conduct may have been reprehensible in some respects, or whose innocence may have been doubtful . . . The judgment is not on the indictment but on something collateral to it. The defendant is not *punished* for a matter of which he stood indicted; (for he is acquitted of everything of that sort), though, *on account of something* of which he was not indicted, some *impropriety of conduct,* or *ground of suspicion,* which the verdict of the jury has fastened on him . . . I grant that a statute imposing costs is *penal* in its nature . . . There may, I apprehend,

be acts, such as certain kinds of fraud, that are offensive to morality, that nevertheless are not indictable . . . Wherever *misconduct* may be fairly imputed, either to a prosecutor or a defendant, they respectively become obnoxious to this kind of legal animadversion, *although neither guilty of, nor technically charged with a crime.*" (Italics supplied.)

We are asked to reconsider the validity of a statute passed upon with approval by our Supreme Court in 1818. That decision would be binding authority upon us except that here, for the first time, substantial constitutional questions are raised in the light of more recent decisions of the Supreme Court of the United States and of the Supreme Court of Pennsylvania which we believe require us to reexamine the matter. Cf. Commonwealth v. Franklin, 172 Pa. Superior Ct. 152.

The imposition of costs upon an acquitted defendant under the Act of 1805 was a punitive measure enforceable by imprisonment: Commonwealth v. Tilghman, supra; Commonwealth v. Harkness, 4 Binney 194. Its subsequent reenactment in the same language by the Act of 1860 indicates its interpretation has been approved by the legislature. This compels the same construction under the later act: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 52(4), 46 PS §552(4); Parisi v. Philadelphia Zoning Board of Adjustment, 393 Pa. 458; Bogdan v. School District of Coal Township, 369 Pa. 147.

But to be constitutional, such a statute must contain clear standards by which to measure the conduct punished by it. If it is so vague that men of common intelligence must guess at its meaning and differ as to its application, it violates the first essential of due process: Lanzetta v. New Jersey, 306 U. S. 451; Chester v. Elam, 408 Pa. 350; Commonwealth v. Franklin, supra. The vagueness may be from uncertainty in regard to persons within the scope of such an act, or in regard

to the applicable tests to ascertain guilt: Winters v. New York, 333 U. S. 507. Fundamental fairness requires notice of what to avoid. If the purpose of the act is not disclosed, punishment may not be imposed for conduct which, at the time of its commission, was not forbidden by law in the understanding of persons seeking to observe the law. This requirement of fair notice that there is a boundary of prohibited conduct not to be overstepped is included in the concept of "due process of law." Where such notice is lacking, it is said the statute is void for indefiniteness: dissenting opinion of Mr. Justice Frankfurter in Winters v. New York, supra. The act in question is totally lacking in any tests or standards by which men of common intelligence can determine what conduct will result in the imposition of costs and allows unbounded latitude for difference of opinion as to the circumstances in which it may be applied to acquitted defendants.

Similarly, for the reasons stated in Commonwealth v. Franklin, supra, the act is also unconstitutional as an improper delegation of legislative power in contravention of article III, section 1, of the Constitution of Pennsylvania. Any statute which vests in a person or body of persons, without any standards except his or their own judgment, the power of supplying, or giving force to, or suspending its terms is unconstitutional. Judicial power is exercised only for the purpose of giving effect to the will of the legislature, which is the will of the law and not of any individual or group of persons: Commonwealth v. Franklin, supra, at 182. The act delegates to a jury the power to inflict punishment without any fixed tests or standards to guide it in such circumstances as it may see fit to do so. In so doing, it is an unconstitutional delegation of legislative power.

Defendant asserts the act violates both procedural and substantive "due process of law" in contravention of the Fourteenth Amendment to the Constitution of

the United States, as that concept has more recently developed as a doctrine of "fundamental fairness." In a procedural sense, it violates that concept because it lacks standards defining, and for determination of guilt of, conduct for which the punishment may be imposed. It gives a defendant no notice of the misconduct upon which the punishment depends or of his right to defend against it. It affords no hearing on the issue of costs but only on the charge contained in the indictment to which the evidence is limited. Finally, it does not require proof beyond reasonable doubt of the misconduct underlying imposition of the penalty: In re Oliver, 333 U. S. 257; Winters v. New York, supra. Thus, it contravenes procedural due process.

Substantively, the act seems to violate "due process" by imposing a punishment or penalty upon defendant found to be innocent under the law and is a denial of "equal protection of the laws", both contrary to the Fourteenth Amendment. The fundamental unfairness of punishing the innocent is self-evident. Apparently, the practice never existed at the English common law, and, so far as we can determine, it does not exist in any other State of the United States. It is specifically condemned in the Constitutions of Florida, North Carolina and Mississippi, and has been criticized in principle in Pennsylvania by Fuller, P.J., in Commonwealth v. Webster, 23 Luz. 359, as an "instrument of oppressive cruelty" which should not be tolerated in a civilized age. The courts of four other States have indicated that costs should not be imposed on acquitted defendants. Cf. Arnold v. State, 76 Wyo. 445, 306 P. 2d 368; Childers v. Commonwealth, 171 Va. 456; State v. Brooks, 33 Kan. 708; Biester v. State, 65 Neb. 276, 91 N. W. 416.

Finally, the act discriminates between innocent defendants in misdemeanor cases and those in cases of felonies generally. Cf. Act of 1860, P. L. 427, sec. 64,

19 PS §1223, which places costs on the county in cases of acquittal of felonies. It has been said ". . . the law does all that is needed when it does all that it can, indicates a policy, applies it to all within the lines, and seeks to bring within the lines all similarly situated so far and so fast as its means allow": Buck v. Bell, 274 U. S. 200, 208. Presumably, the improper conduct giving rise to felony prosecutions is of higher degree than in misdemeanor cases, so that no reason or justification appears to support the distinction. The result is to impose a penalty on one accused but acquitted of the lesser, while relieving one accused but acquitted of a higher, degree of crime. This is an unreasonable classification and a denial of equal protection of the laws: Skinner v. Oklahoma ex rel. Williamson, 316 U. S. 535.

We consider the imposition of costs upon acquitted defendants in misdemeanor cases is, under the modern concepts of "due process of law" and "fundamental fairness," equally as offensive to the Fourteenth Amendment to the Constitution of the United States as was the requirement of entry of security after acquittal on penalty of commitment in default thereof, which was struck down in Commonwealth v. Franklin, supra. What was there said, at page 194, ff., applies equally here, especially: "The evil [of the statute] we are considering is that it is in reality an effective power to punish in virtually unrestrained form." Under the more recent decisions of the courts of the United States and of this Commonwealth, section 62 of the Act of 1860, P. L. 427, 19 PS §1222, is unconstitutional and void insofar as it permits imposition by the verdict of a jury of the costs of prosecution on acquitted defendants in misdemeanor cases.

Defendant's motion to be relieved of the costs of prosecution is granted. The verdict, insofar as it imposes upon defendant the penalty of the payment of costs of prosecution, is set aside as being contrary to

law. The sentence imposed upon defendant that he pay said costs forthwith or give security to pay the same within ten days and to stand committed until he had complied therewith is vacated.