STATE OF NEBRASKA, APPELLEE, V. LARRY HODGE, APPELLANT.
STATE OF NEBRASKA, APPELLEE, V. THERESA JANE CARPENTER, APPELLANT.

402 N.W.2d 867

Filed March 27, 1987.   Nos. 86-611, 86-646.

Hal W. Anderson of Berry, Anderson, Creager & Wittstruck, and Michael T. Brogan of Brogan & Stafford, P.C., for appellants.

Robert M. Spire, Attorney General, and Linda L. Willard, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The defendants, Larry Hodge and Theresa Jane Carpenter, were charged in separate informations with possession of marijuana with intent to manufacture, distribute, deliver, or dispense. After a consolidated trial on stipulated facts, they were found guilty. The defendant Hodge was sentenced to 3 to 5 years' imprisonment, with credit for 2 days served. Carpenter was sentenced to 1 to 3 years' imprisonment, also with credit for 2 days served.

On appeal, the defendants attack the constitutionality of a search made on September 29, 1985, claiming that the trial court erred in finding there was probable cause to issue the search warrant and in failing to find the evidence was seized in violation of the defendants' rights under both the U.S. and Nebraska Constitutions. Hodge also claims his sentence was excessive.

On September 28, 1985, Ronald Hilliges, an investigator with the Nebraska State Patrol, obtained a search warrant for the defendants' leased residence, a farmhouse, in Pierce County, Nebraska.

The warrant was issued on the basis of an affidavit by Hilliges, which provided as follows:

> Ronald J. Hilliges, being duly sworn, upon oath deposes and says that he is an investigator with the Nebraska State Patrol office in Norfolk, Nebraska.
>
> Affiant states that he had received information from a confidential informant that Larry Hodge had sold marijuana in pound or larger quantities during 1982. Affiant was at that time uncertain as to the reliability and truthfulness of the informant so he began to monitor the activity of Larry Hodge.
>
> In November of 1984 affiant, together with other law enforcement officials, observec [sic] approximately 600 cultivated marijuana plants that had been grown and harvested near the Stanton County residence that was then occupied by Larry Hodge. Also observed and found by affiant were hand tillage tools, fertilizer, fertilizer containers and remnants of the cultivated plants at the marijuana patch.

Affiant was informed that Larry Hodge and Jane Carpenter, who resided in the Stanton County farmshouse [sic] with Larry Hodge, moved out of that residence sometime during June 1985. Despite that fact that Larry Hodge moved from the residence, he continued to pay rent on the residence until approximately September 1, 1985.

Affiant further states that after the lease was terminated on or about September 1, 1985, he personally viewed the Stanton County residence that had been occupied by Larry Hodge. The house contained a stairway door that was padlocked which led to the attic. The attic contained leaves and pieces of marijuana, wire was strung in the attic for drying, nylon screening was used for drying, and a plastic bag containing approximately one quarter ounce of marijuana was found.

Affiant further states that the acreage and area surrounding the Stanton County farmhouse then occupied by Larry Hodge had been monitored again since late spring in 1985. Affiant observed marijuana being grown and cultivated near the farmhouse occupied by Larry Hodge. The marijuana plants were weeded and the male plants were removed from the patch during the summer. Affiant further states that the marijuana plants were still growing in the aforementioned patch when observed on Wednesday morning, September 25, 1985. However, when affiant observed the patch on Friday afternoon, September 27, 1985, the plants had been harvested.

Affiant further states that a well defined path from the house, that was formerly occupied by Larry Hodge, to the marijuana patch was observed. Also an alternate path that appeared to be more secluded but which crossed a marshy wet area of property from the house to the marijuana patch was observed by affiant.

Affiant further states that Larry Hodge and Jane Carpenter moved from the Stanton County residence to a Pierce County farmstead residence that is now leased by Larry Hodge and that is located on the real estate

described as the Southeast Quarter of the Southeast Quarter(SE$^1$/$_4$SE$^1$/$_4$) of Section Eleven (11), Township Twenty-five (25) North, Range Two (2) West of the 6th P.M., Pierce County, Nebraska.

Affiant, therefore, believes that the following items will be found within the farmstead residence leased by Larry Hodge that is located on the real estate described as the SE$^1$/$_4$SE$^1$/$_4$ 11-25-2 Pierce County, Nebraska: or the out-buildings or surrounding area of the farmstead residence of Larry Hodge heretofore described; or any motor vehicle owned by Larry Hodge; or any motor vehicle owned by Jane Carpenter:

1. Evidence of marijuana harvesting tools

2. Plastic bags for storing marijuana similar to that found in the vacated Stanton County residence

3. Literature on the cultivation of marijuana

4. Tools used in the cultivation of marijuana

5. Records or documents relating to transactions dealing with the sale of marijuana including telephone numbers of possible buyers

6. Marijuana seeds

7. Drying racks used for drying marijuana

8. Marijuana plants and marijuana leaves

9. Processed marijuana

10. Nylon screening similar to that found in the vacated Stanton County residence.

Affiant further believes that since the heretofore described items of property are easily movable or easily destroyed, said items of property may be moved or hidden in a different location, or destroyed, if not seized without further delay, and, therefore, request that a Search Warrant be issued and be authorized to be served at any time.

The warrant was served on the defendants at their Pierce County residence on September 29, 1985. A large quantity of marijuana was seized from the home and surrounding outbuildings. As a result, the defendants were charged with possession of a controlled substance with intent to manufacture, distribute, deliver, or dispense.

Both defendants filed motions to suppress the evidence

seized as a result of the search. After a consolidated hearing on February 10, 1986, the motions to suppress were overruled. At trial the issues raised in the motions to suppress were preserved by timely objections to the offered evidence.

The defendants maintain the articles seized were improperly admitted in evidence because the affidavit in support of the warrant was wholly defective, lacked sufficient foundation for issuance of the warrant, and appeared to contain information obtained as the result of an earlier illegal search.

Although it contained certain inaccuracies, the defendants have not attacked the veracity of the statements contained in the affidavit.

According to the defendants, the major problem with the affidavit is that most, if not all, of the allegations of fact concern activity at a location other than the location for which the search warrant was obtained.

Having previously adopted the *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), "totality of the circumstances" analysis, the duty of this court in reviewing probable cause determinations as to search warrants "is only to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *State v. Abraham*, 218 Neb. 475, 478, 356 N.W.2d 877, 879 (1984). Probable cause is defined as a reasonable suspicion founded on articulable facts and does not require a prima facie showing of criminal activity. *State v. Abraham, supra.* Instead, it is the probability of such activity that must be shown. *State v. Abraham, supra.*

Further, in determining the validity of the search warrant, the reviewing court may consider only information brought to the attention of the issuing magistrate. *State v. Holloway*, 187 Neb. 1, 187 N.W.2d 85 (1971). A magistrate's determination of probable cause is to be paid great deference by reviewing courts, and warrants should not be invalidated by interpreting the supporting affidavit in a hypertechnical, rather than a commonsense, manner. *Illinois v. Gates, supra.*

This court has previously held that a search warrant may be issued for a location where it is probable that the property described would be found. *State v. Abraham, supra.* The affidavit in the present case contained evidence sufficient to

indicate that it was probable that the items listed would be found at the defendants' Pierce County residence.

As the affidavit makes clear, at the time of the warrant the defendants were no longer residing at the Stanton County residence. Also according to the affidavit, the defendants had moved to the Pierce County residence in June of 1985, yet had continued to pay rent on the Stanton County residence through approximately September 1, 1985. This information gave the issuing magistrate facts which connected the defendants with the Stanton County residence for the relevant time periods.

The affidavit also indicates that marijuana was observed to be cultivated in a patch connected by two paths with the Stanton County residence during the spring and summer of 1985. The marijuana was ultimately harvested sometime between September 25 and 27, 1985. From this information the magistrate had facts sufficient to raise a reasonable suspicion that a crime had been committed near the Stanton County residence by someone connected with the house.

Further, the affidavit reflects that a search of the Stanton County residence following the termination of the defendants' lease revealed leaves and pieces of marijuana, materials used in drying marijuana, and a bag containing a quarter ounce of the substance. This information suggested that the defendants had processed marijuana in that residence, and since they no longer had access to the Stanton County house when the 1985 marijuana crop was harvested, it further suggested use of their new home for similar purposes. See *State v. LeBron*, 217 Neb. 452, 349 N.W.2d 918 (1984). Thus, from a review of the totality of the circumstances, we conclude that the issuing court had a substantial basis for concluding that probable cause existed to issue a search warrant for the Pierce County residence.

As previously mentioned, the defendants do not challenge the warrant on grounds of inaccuracies contained in the affidavit. We comment on those inaccuracies only to note that they would not have required invalidation of the warrant had their truthfulness been challenged.

To invalidate a warrant on grounds that the supporting affidavit was false, the defendant bears the burden of showing that the affiant made a deliberate falsehood or acted with

reckless disregard for the truth and that the challenged information was material or necessary to a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *State v. LeBron, supra.*

The inaccuracies in this case relate to the fact of when the defendants actually moved from Stanton County to Pierce County. At the time of the affidavit the affiant, Hilliges, stated that the defendants had lived in the Stanton County residence until June of 1985 and had continued to pay rent on the house until September 1, 1985. At the suppression hearing, Hilliges testified that in fact, from November of 1984 through August of 1985, Jay Brummond, and not the defendants, had lived in and paid rent on the Stanton County residence. Nevertheless, Hilliges' testimony also indicated that he had reasons for his mistaken beliefs when the affidavit was made. Both defendants had been frequently observed at the Stanton County residence after November of 1984. After at least three occasions when the defendants were observed there, changes in the nearby marijuana patch, such as thinning, trimming, and weeding, were also observed. The affiant believed that the defendants continued to pay rent on the residence despite the fact that they had moved out because they still had property remaining at the location during 1985. As such, the affiant did have a reasonable basis upon which to base his beliefs, and the defendants could not be said to have met their burden of showing the affiant deliberately misled or acted with reckless disregard for the truth regarding the defendants' property interest in the Stanton County residence.

Next, the defendants contend the information in the affidavit regarding observations from 1982 through 1984 was stale as to a probable cause determination made in 1985. Proof of probable cause justifying issuance of a search warrant generally must consist of facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time. *State v. Kallos*, 193 Neb. 113, 225 N.W.2d 553 (1975). Whether the proof satisfies this test is determined by the circumstances in each case. *State v. Kallos, supra.*

Viewed separately, the observations contained in the affidavit regarding the defendants' activities between 1982 and

1984 were perhaps too distant to warrant a probable cause determination in September of 1985. Such a conclusion ignores the fact that the affidavit also contained information from up to a day prior to the issuance of the warrant which clearly supported the probable cause determination. The observations from 1982 merely served to indicate how and why the defendants became subjects of police surveillance. The observations from 1984 tended to establish a pattern of marijuana cultivation at the Stanton County property and, in conjunction with the 1985 observations, suggested that the defendants were probably responsible for that practice. Thus, viewed as a whole, the information contained in the affidavit was not too stale to establish probable cause for issuance of the warrant in September of 1985.

The defendants also argue that the affidavit contained information obtained by means of an illegal search. Specifically, they complain that the evidence obtained from the Stanton County residence after the defendants' lease had clearly ended was illegally obtained because the door to the attic where the evidence was discovered was padlocked prior to the search.

> [A] person's capacity to claim the protection of article I, § 7, of the Nebraska Constitution as to unreasonable searches and seizures, like its counterpart, the fourth amendment to the U.S. Constitution, depends upon whether the person who claims such a protection has a legitimate expectation of privacy in the invaded place.

*State v. Havlat*, 222 Neb. 554, 560, 385 N.W.2d 436, 440 (1986).

Evidence presented at the suppression hearing indicated that the defendants had not lived in the Stanton County house since November of 1984. At the time of the affidavit, the affiant believed that the defendants had moved in June of 1985 but had continued to pay rent on the house until September 1, 1985. Nevertheless, when the search of the Stanton County residence was conducted sometime on or after September 1, 1985, it was apparent that the house had been vacated by the defendants and the alleged subsequent tenant, who the defendants claim leased the house from November of 1984 through August of 1985.

The articles seized from the attic included letters, cards, and

books belonging to the defendants which were located with the seized marijuana and drying materials.

In *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984), the Court stated that an unreasonable search within the meaning of the fourth amendment occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed."

Recently, in *State v. Kenny*, 224 Neb. 638, 399 N.W.2d 821 (1987), this court held that the defendant had no reasonable expectation of privacy in a letter he posted in a public mailbox and sent through the mail to another. In that instance, the court concluded that while the defendant may have hoped for privacy, he had no fourth amendment expectation of privacy because he had relinquished physical control over both the letter and the recipient.

In the present case, although the defendants may have left a padlock on the attic door, they effectively relinquished control of the Stanton County residence when their lease ended and they vacated the premises. See *Abel v. United States*, 362 U.S. 217, 80 S. Ct. 683, 4 L. Ed. 2d 668 (1960) (hotel had exclusive right to possession of hotel room after petitioner vacated room, and seizure of property he had abandoned in the room was lawful as search was made with the free consent of the hotel management).

Absent a reasonable expectation of privacy in the searched premises, the defendants are without standing to claim a fourth amendment violation in regard to the search of the vacated Stanton County residence. The seized evidence was thus properly relied upon in the affidavit for the search warrant and was properly received in evidence at trial. See *State v. Kenny, supra.*

Finally, Hodge contends that his sentence of 3 to 5 years' imprisonment is excessive and constitutes an abuse of discretion by the sentencing court. Hodge was convicted of knowingly or intentionally possessing with intent to manufacture, distribute, deliver, or dispense marijuana in violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1985). That crime is a Class III felony which is punishable by up to 20 years' imprisonment, a $25,000 fine, or both, with a minimum sentence of 1 year's

imprisonment. Neb. Rev. Stat. §§ 28-105 and 28-416(2)(b) (Reissue 1985).

Ordinarily, a sentence imposed within statutory limits will not be overturned on appeal, absent an abuse of discretion by the sentencing court. *State v. Gonzales,* 224 Neb. 659, 399 N.W.2d 832 (1987).

The record in the present case shows that 42 pounds of marijuana and a variety of processing materials were seized from the defendants' residence. At the sentencing hearing, the 34-year-old Hodge acknowledged full responsibility for the operation. The trial court committed no abuse of discretion in sentencing Hodge.

The judgments are affirmed.

AFFIRMED