Robert Lee C. KAESS, Sr.,
Appellant (Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff) (Two Cases).

Nos. 86–113, 86–196.

Supreme Court of Wyoming.

Dec. 7, 1987.

Daniel G. Blythe, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen. and Sylvia Lee Hackl, Sr. Asst. Atty. Gen., for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Appellant Robert Kaess, was charged by misdemeanor information with killing three moose while possessing a license to hunt only one—an offense of wanton destruction of a big game animal. After a comprehensive preliminary hearing and a three-day jury trial, he was convicted of the high misdemeanor and sentenced to a one-year county jail term, fined $1,000.00, $15.00 for the victim's compensation fund, and, by a supplemental order, assessed costs of prosecution of $6,926.28 and $1,346.00 restitution to the Wyoming Game and Fish Department for the two "illegal" moose.

Issues presented on appeal include: (1) prosecution violation of the sequestration order; (2) inappropriate preparation of witnesses by prosecution; (3) comment of the court to a witness involving an issue of perjury; (4) trial identification of defendant; and (5) bill of costs. We will affirm on all issues except the bill of costs for which the case will be remanded.

As the jury did, we are entitled to find from the record that while possessing a license to kill only one moose, Kaess killed three in the period of September and October, 1984. An extensive investigation by the Wyoming Game and Fish Department led to the filed criminal charges consolidated into the wanton-destruction high-misdemeanor information complaint.

## I. SEQUESTRATION

Barkley Bonine, an attorney present only as a friend of Kaess, was at the trial. Appellant had requested witness sequestration pursuant to Rule 615, W.R.E. On the third day Kaess moved for mistrial, contending that the sequestration order had been generally violated by the prosecution witnesses' discussion of prior testimony. To address the motion, with the jury excused, Bonine, as a spectator, was called to testify about the sequestration violation contention. After listening, the trial court reflected on the limited space available in the courthouse to sequester witnesses, and concluded:

"Mr. Bonine has told the Court absolutely nothing that would indicate that any witness hasn't told the truth, that any witness was in any way told about what to say, what not to say."

Noting that the defendant did not inform the court of the contended sequestration problem until the trial was almost completed, the trial judge denied the mistrial motion, and the trial continued.

 A motion for mistrial is addressed to the sound discretion of the trial court. The only evidence supporting the motion was the Bonine testimony, and after record review we concur with the trial court and find no abuse of discretion. *Martin v. State*, Wyo., 720 P.2d 894 (1986). Defendant has neither made a showing of prejudice which is necessary to constitute reversible error, nor has he demonstrated a violation of the court's order of sequestration. Generally speaking, a request for sequestration of witnesses is a request that they be excluded from the courtroom until called to testify, and the order alone does not automatically put the witnesses on notice that they are not to discuss their testimony with other witnesses. To effectuate an extension of the sequestration order to prohibit discussion and exchange between witnesses, a specific request should be made and the witnesses appropriately advised. *State v. Hodge*, 225 Neb. 94, 402 N.W.2d 867 (1987).

## II. WITNESS TAMPERING

 A somewhat more unusual complaint is made about prosecution conduct with witnesses. Appellant contends in his brief that the prosecutor prepared a "script" from which witness testimony was arranged:

"Prior to the Preliminary hearing and prior to the trial the prosecutor held a pre-trial conference with the witnesses to compare the testimony of all the witnesses. The prosecutor then prepared scripts for the witnesses to use in trial. The scripts detailed the testimony of the witnesses. The scripts told when to make

the in court identification and who to identify for the jury. The witnesses testified according to the scripts."

This issue was not raised at trial by motion or objection. Defense counsel did, however, attempt to use the existence and content of the "script" to impeach the prosecution witnesses through cross-examination. That opportunity for cross-examination was not restricted, and we see nothing more than careful trial preparation by the prosecution and a responsive effort by the defense to diminish the effect of the testimony by credibility attacks. Apparently no witness went to the witness stand with the "script," which apparently consisted of direct-examination questions. None of the "outlines" was introduced into evidence or otherwise presented for appellate review. We perceive no reversible error. *LeFaivre v. Environmental Quality Council*, Wyo., 735 P.2d 428 (1987); *Fiedler v. Steger*, Wyo., 713 P.2d 773 (1986). Obviously the cross-examination trial effort of defendant to attack credibility did not succeed with the jury. Appellant has not supported this claimed error with adequate record, cogent argument or case authority, and we need not consider it. *Jones Land and Livestock Co. v. Federal Land Bank of Omaha*, Wyo., 733 P.2d 258 (1987).

## III. TAINTED IDENTIFICATION AND COURT–WITNESS MISCONDUCT

 It is next argued that the in-court identification was tainted by advance suggestive information provided by the prosecuting attorney. No objection was made at trial to the identification, which certainly was not in question, and any objection which might have been made is consequently waived. This case does not present plain error sufficient to obviate the responsibility of defense counsel to make his record at trial. Rule 49(b), W.R.Cr.P.; *MacLaird v. State*, Wyo., 718 P.2d 41 (1986).

 An event then occurred at trial which presents the next appellate claim of error. One witness' testimony tended to change during trial, raising a question of

perjury and the possibility that the witness had been threatened by appellant. After a brief inquiry, the jury was excused and threats to the witness explored, including a tape-recorded telephone conversation. Appellant's bond was revoked, a deputy sheriff was called into the court, and the examination of the witness continued. The trial court necessarily has discretion to take such proper precautions in a hotly contested criminal trial, and we find no reversible error. See *Weddle v. State*, Wyo., 621 P.2d 231 (1980); *Phillips v. State*, Wyo., 597 P.2d 456 (1979); *Deeter v. State*, Wyo., 500 P.2d 68 (1972). Unquestionably, the court acted rather strongly after the jury was excused, in response to the apparently frightened and obviously threatened witness. All of this undoubtedly did not help the defendant as far as the ultimate sentence was concerned,[1] but as far as appearance to the jury, the court's comment when the jury was called back to the session was of a nature that cannot be considered repressive:

"Okay. You take your time. We understand more about it now, so you just take your time. Okay. Don't worry about me."

Additionally, objection to the course of events is not found in the record by either a motion for mistrial, a motion to strike, or a request for a cautionary instruction. *MacLaird v. State*, supra.

## IV. BILL OF COSTS

The more difficult issues of this appeal are the result of assessed costs. In the final order, dated June 30, 1986, after first appeal had been instituted as here presented by a second appeal in this combined case, the trial court ordered the defendant to pay prosecution costs of $6,926.88 and restitution for two moose of $1,346.00. In the judgment and sentence entered April 2, 1986, the court provided:

"5. That the defendant be and he is hereby assessed costs ~~in the amount of~~

1. Confinement for one year—365 days in the county jail in Jackson, Wyoming is a long time, whether for the burglar, the burgher, or the

$————, (in an amount to be determined by the court. RBR. [Handwritten insertion.])."

As an amended bill of costs, the prosecuting attorney had requested:

"PRELIMINARY HEARING

| | |
|---|---|
| "Carol Wanker (witness fee and meal expenses) | $ 60.02 |
| "Nelsons (mileage, witness fees and meals) | 337.04 |
| "Ray Umber (mileage, witness fee and meals) | 312.42 |
| "Mark McIntire (mileage, lodging, witness fee) | 125.92 |
| "Preliminary hearing transcript | 231.25 |

"JURY TRIAL

| | |
|---|---|
| "Westlaw research (39 minutes 58 seconds of research time @ $140.00 per hour) | 93.13 |
| "Airline tickets— | |
| "Dave Thomas | 440.00 |
| "Kim and Colin Fritzler | 731.00 |
| "Ray Umber | 440.00 |
| "Laurie Vandersluis | 325.00 |
| "Carol Wanker | 410.00 |
| "Ed Barruth | 310.00 |
| "Motel rooms for witnesses | 824.00 |
| "Food charged at Wort Hotel by witnesses | 1150.49 |
| "Witness fees— | |
| "Laurie Vandersluis | 30.00 |
| "Deon Robinson | 20.00 |
| "Fritzlers | 60.00 |
| "Ray Umber (and taxi to airport) | 50.00 |
| "Dave Thomas (and mileage to Phoenix) | 92.00 |
| "Carol Wanker | 30.00 |
| "Bill Robertson | 30.00 |
| "Kip McIntire (and mileage) | 141.00 |
| "Will Martin (and mileage) | 180.00 |
| "Mark McIntire | 30.00 |
| "Nelsons (and mileage and food) | 370.40 |
| "Ed Baruth | 59.12 |
| "Photographic enlargements (Quality Photo) | 50.12 |
| "Photographic enlargements (Custom Color Lab) | 86.50 |

"GENERAL

| | |
|---|---|
| "Moose ($673.00 × 2) | 1346.00 |
| | ———— |
| "TOTAL | $8365.41" |

By order entered after a later hearing, the court provided:

independent-minded rancher. The event of one person killing three moose in this area in one year is not historically unnoticed in past events.

"1. That the defendant pay to the State of Wyoming the sum of $6926.28 as costs in this matter. [Westlaw charges were the only item denied.]

"2. That the defendant pay to the Wyoming Game and Fish Department the sum of $1346.00 as restitution in this matter for the two moose which were wantonly destroyed by the defendant."

*Restitution for the moose*

The easier issue to resolve is restitution for the two additional non-licensed moose. The applicable statute, § 7–13–109(b), W.S. 1977, 1986 Cum.Supp., enacted by Ch. 27, S.L. of Wyoming 1984, and now recodified as § 7–9–101 through § 7–9–112, W.S.1977, 1987 Replacement, provides:

"(b) At the time of sentencing a defendant for any misdemeanor or felony conviction, if the court desires to require restitution, the court shall fix a reasonable amount as restitution owed to each victim for pecuniary damages resulting from the defendant's criminal activity, and shall include its determination as a special finding in the judgment of conviction."

■■■ We do not find the reserved determination of assessable costs to include a conjectural right to *later* require restitution in contravention of the double-jeopardy clause in Art. 1, § 11 of the Wyoming Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. In order to comply with the statute, restitution must be included in the judgment and sentence. It is apparent from the record that the prosecuting attorney intended to include the two moose as "costs." After resistance by defendant, this part of the cost claim was converted to a restitution obligation, and was entered substantially later than the original judgment and sentence. A sentence cannot be increased after it has been entered, nor

may restitution be added at a later date. *Turner v. State*, Wyo., 624 P.2d 774 (1981); *Sullens v. United States*, 409 F.2d 545 (5th Cir.1969). Cf. *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). See, however, Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences*, 78 Mich.L.J. 1001 (1980). Additionally, contrary to the contention of appellee, we do not find any factual evidence of the value of the moose to the Wyoming Game and Fish Department. The value ascribed to a moose on the prosecutor's amended bill of costs is not proof of value. This record affords no information as to how, by whom and under what circumstance the value of one moose was achieved.[2] *Petty–Ray Geophysical, Division of Geosource, Inc. v. Ludvik*, Wyo., 718 P.2d 9 (1986); *Midway Oil Corporation v. Guess*, Wyo., 714 P.2d 339 (1986).

*Costs of prosecution*

At the time the moose were killed, the statutes for assessment of costs in misdemeanor cases were §§ 7–11–515 through 7–11–516, W.S.1977, and § 7–8–123, W.S. 1977. Wyoming statutes at the time of the crime and conviction contained no comparable provision for felony trial cost assessment.[3] The misdemeanor cost-assessment statutes provided:

"In all cases of misdemeanors tried before justices of the peace, or the district courts of this state, by indictment or information, in which the defendant may be convicted, the punishment shall be within the discretion of the court, limited as penalties now are by law, except that payment of the costs of prosecution may be added to and made a part of the sentence, and the court may in its discretion direct the defendant to stand committed until the sentence, including costs,

---

**2.** As the sages have said, "A moose to me may be a mouse to you." It is all dependent upon the perspective.

**3.** In *Burke v. State*, Wyo., 746 P.2d 852 (1987), the question of assessment of costs of prosecution in any amount in a *felony case* was considered. The present statutes, effective May 22,

1987 with the recodification of Title 7 Criminal Procedure, eliminated differences between felonies and misdemeanors by making all offenses similarly subject to prosecution "costs" assessment upon conviction. See §§ 7–11–504 and 7–11–505, W.S.1977, 1987 Replacement.

shall be complied with." Section § 7–11–516, W.S.1977, now renumbered § 7–11–505, W.S.1977, 1987 Replacement, effective May 23, 1985.

"Any court shall have power, in all cases of conviction when any fine is inflicted, to order, as part of the judgment of the court, that the offender shall be committed to jail, there to remain until the fine and costs are fully paid, or otherwise legally discharged." Section 7–11–515, W.S.1977, now renumbered § 7–11–504, W.S.1977, 1987 Replacement, effective May 23, 1985.

Cursory consideration of the misdemeanor cost assessment statute was given in *Johnson v. State*, Wyo., 532 P.2d 598 (1975), where this court determined that (1) jury and bailiff expenses could not be taxed as costs, and (2) the expense of expert medical witnesses could only be charged at the statutory rate of $25. That decision left open the possibility of additional payments for three further witnesses. The tenor of the case was to follow the standards applicable to civil cases. To a similar effect, see *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, — U.S. —, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Until the legislature provides some statutory differentiation, or this court adopts special provisions within the rules of criminal procedure, general standards as applicable to costs in civil cases will be applied, including witness fees, service fees, and fees for depositions when actually used, since no basis exists for differentiating assessable costs in civil and criminal cases. See Rule 54(d), W.R.C.P.; Rule 1, W.R.C.P.; Rule 20(a), W.R.Cr.P.

Certain principles, as well as problems, can be extrapolated from the Wyoming criminal and civil cost-assessment cases.

■ (a) Costs may only be assessed as statutorily authorized. *Burke v. State*, Wyo., 746 P.2d 852 (1987); *Bernard v. State*, Wyo., 652 P.2d 982 (1982); *Mader v. Stephenson*, Wyo., 481 P.2d 664 (1971); *Arnold v. State*, 76 Wyo. 445, 306 P.2d 368 (1957); *State v. Faulkner*, 75 Wyo. 104, 292 P.2d 1045 (1956); *Wyoming Central Irrigation Co. v. LaPorte*, 26 Wyo. 522,

188 P. 360 (1920). The civil costs statute, § 1–14–124, W.S.1977, affords no itemization detail, nor does any procedural rule. Even in the civil cases, what may be assessed as costs against the loser is "not very clearly established by either statute or rule," *Roberts Construction Co. v. Vondriska*, Wyo., 547 P.2d 1171, 1182 (1976).

■ (b) The standard generally applied is the amount statutorily allowed for witness fees and travel expenses duly claimed and supported by evidence. Section 1–14–102, W.S.1977, 1987 Cum.Supp. See, however, *State v. Dieringer*, Wyo., 708 P.2d 1 (1985), and *Buttrey Food Stores Division v. Coulson*, Wyo., 620 P.2d 549 (1980).

■ (c) Institutional costs resulting from court, jury and bailiff expenses as examples, cannot be charged. Finally, what may be paid by a litigant does not define in exact amount what may be assessed as court costs to the loser. *Johnson v. State*, supra; *Crouse v. State*, Wyo., 384 P.2d 321 (1963); *Hahn v. State*, 78 Wyo. 258, 322 P.2d 896 (1958).

■ Based on the trial transcript and the filed but otherwise unsupported "list of expenses" submitted by the prosecution as the bill of costs, we could only find a factual basis for approval of witness fees at the statutory rate, and travel costs on a mileage basis or actual costs of airline ticket, whichever is less. *Kalman v. Western Union Telegraph Co.*, Wyo., 390 P.2d 724 (1964). See also *Mader v. Stephenson*, supra. We conclude that there is no precedent in Wyoming case law, statute or rule which permits the costs of the preliminary hearing to be assessed after conviction. Neither is there such authority in favor of or against the defendant that would include motel rooms, food, or photographic enlargements. See *State v. Dieringer*, supra; *Roberts Construction Co. v. Vondriska*, supra; Note, *The Assessment and Collection of the Costs of Criminal Prosecution in Wyoming*, 13 Wyo.L.J. 178 (1959).

To be repetitive, the subjects of costs of prosecution and defense, which are confused structurally and constitutionally, may deserve consideration by the legisla-

ture, and by instrumentalities of the judiciary such as the rules advisory committee under the mandate of § 5–2–117, W.S.1977.

In Case No. 86–113, the judgment and sentence entered April 2, 1986 is affirmed. In Case No. 86–196, the assessment of costs as established by order entered July 1, 1986 is reversed and remanded for further proceedings in accordance herewith.