Benjamin JUAREZ, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 89–122.

Supreme Court of Wyoming.

April 30, 1990.

Public Defender Program: Mike Cornia, Appellate Counsel, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Kaylin D. Kluge, Asst. Atty. Gen., Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellant Benjamin Juarez was convicted of felony assault on a peace officer. He challenges those portions of his sentence requiring him to repay both the public defender for costs of legal services and the district attorney for costs of prosecution. We find the trial court erred in the manner in which it imposed the requirements of repayment of these costs and declare the judgment and sentence void with respect to those aspects challenged by Juarez.

The issues raised by Juarez, as rephrased for clarity by the state, are whether:

I. the part of appellant's sentence requiring reimbursement of costs incurred by the public defender is constitutional?

II. the part of appellant's sentence requiring reimbursement of costs incurred by the public defender was proper if there was no finding of ability to pay?

III. the part of appellant's sentence requiring repayment of costs of prosecution is proper and constitutional?

FACTS

Juarez, represented by private counsel, was tried before a jury on January 16, 1989, and found guilty. He had been charged with felony assault on a peace officer in violation of W.S. 6-5-204(b) (June 1988 Repl.). On March 6, 1989, Juarez filed an affidavit for a court-appointed attorney. In his affidavit Juarez said that he had last worked in October, 1988; his last paycheck was $45.32; he was unemployed; he lived with his unemployed girlfriend; he had no money in either a checking account or a savings account; he did not own a

vehicle; he did not own any property; his family and friends could not come up with any money to help him hire a lawyer; and he listed his debts as $5,000 owed to his trial lawyer and an unknown amount for child support. Relying on Juarez's affidavit, the court appointed a public defender on March 6, 1989, to represent Juarez in all future proceedings.

On March 24, 1989, Juarez and the newly appointed public defender appeared for a sentencing hearing where, among other things, the public defender advised the trial court that Juarez worked and earned $12.90 an hour. The court's response was that it had to proceed on the basis of the representations made at the time of the public defender's appointment to the case. Because Juarez needed more time to discuss sentencing with his newly appointed lawyer, the sentencing hearing was continued to April 12, 1989. During that hearing the public defender stated that Juarez was currently employed in the construction trade making more an hour than the public defender. State's counsel pointed out that although Juarez was currently earning $14 an hour, he had paid only $80 against the amount of $3,000 owed to an assault victim in an April 1988 incident. Other than the foregoing references, the transcript of this hearing does not contain information, discussion, or findings concerning Juarez's financial situation.

At the conclusion of the hearing the trial court orally pronounced judgment and sentence. Juarez was sentenced to one and one-half years, but not more than two and one-half years in the state penitentiary. His sentence was suspended, but he was required to serve a sixty-day jail term. He received credit of five days pre-sentence jail time against the sixty days term. The court then ordered two years probation following his release from the jail term, including terms and conditions of the proba-

tion. The trial court finished the sentencing pronouncement in these words: "There will be a requirement of reimbursement to the State for the cost of the public defender; a one hundred dollar contribution to the victim compensation fund." *Nothing* was said about a requirement that Juarez reimburse the state for the cost of prosecution.

Written judgment and sentence was filed on April 17, 1989, in which the court ordered Juarez to repay the state for all expenses and services provided by the public defender's office.[1] The written judgment and sentence further ordered Juarez to repay the state the amount of $1,428.63 for all expenses incurred for the services of the prosecution.[2] It is evident that the provision in the written judgment and sentence requiring Juarez to repay prosecution costs was not part of the April 12 sentencing hearing.

Counsel for Juarez approved the written judgment and sentence as to form, but never raised questions about the terms and requirements of the judgment and sentence at the April 12 sentencing hearing or thereafter until this appeal.

### Constitutionality of W.S. 7-6-106(d)

In W.S. 7-6-106, the legislature has provided the mechanism by which the trial court shall determine whether a criminal defendant is a "needy person" for purposes of the Public Defender Act. A "needy person" is one who is "unable to provide for the full payment of an attorney and all other necessary expenses of representation." W.S. 7-6-102(a)(iv). In determining the extent of the criminal defendant's inability to pay for legal services, the trial court shall consider the standards promulgated by the office of public defender. *See* W.S. 7-6-103(c)(vii) and 7-6-106(b). The criminal defendant shall certify in writing to the trial court "the material factors re-

---

1. These costs were to be repaid within the time period of Juarez's probation. The repayment plan was to be prepared by the Department of Probation and Parole and approved by the trial court in accordance with the public defender's standard fee schedule. W.S. 7-6-106(d) (June 1987 Repl.).

2. Again, costs were to be repaid during Juarez's probation period and to follow the approved plan of both the Department of Probation and Parole and the trial court in accordance with the district attorney's standard fee schedule. W.S. 7-11-505 (June 1987 Repl.).

lating to his ability to pay as the court prescribes." W.S. 7–6–106(b). In making its order that the criminal defendant reimburse the state for the cost of legal services provided, the trial court "shall consider the financial resources of the [criminal defendant] and the expenses and services provided in light of the state public defender's standard fee schedule." W.S. 7–6–106(c).

The public defender's office promulgated standards, including a fee schedule for private counsel, which became effective July 21, 1989. The record in Juarez's appeal does not reveal what standards, if any, were in effect at Juarez's sentencing hearing, and the record does not reveal what fee schedule, if any, was in effect on that date.

■ Although Juarez asks this court to declare W.S. 7–6–106(d) unconstitutional, we need not address that issue because he raises this issue for the first time on appeal,[3] and because we can dispose of the issue concerning the requirement of the repaying of the public defender's legal services on another ground. The assessment of costs of the public defender was improper.

The record fails to show that the trial court made findings with respect to Juarez's financial ability to pay for the public defender's legal services. When read together, as they must be, the provisions of W.S. 7–6–106 require that the trial court make express findings concerning the factors set forth in the statutory language. As those findings were not made here, we reverse that portion of the judgment and sentence without remand. *Keller v. State,* 771 P.2d 379, 387 (Wyo.1989).

### Constitutionality of W.S. 7–11–505

Juarez challenges the constitutionality of W.S. 7–11–505, concerning repayment of the costs of prosecution. This issue was not raised in the trial court, although there

was opportunity at the time counsel for Juarez approved the written judgment and sentence as to form. Neither did counsel attack the judgment and sentence as illegal under W.R.Cr.P. 36. We decline, therefore, to consider Juarez's constitutional challenge. *Baum,* 745 P.2d 877, 882 (Wyo. 1987).[4]

### Assessing the Costs of Prosecution

■ Juarez claims that the trial court erred in requiring him to repay the costs of the prosecution. We agree. During the sentencing hearing, the prosecution offered no evidence to establish the costs of prosecution, and the trial court's oral imposition of judgment and sentence did not include these particular costs to be repaid by Juarez. When the costs appeared in the written judgment and sentence five days after the sentencing hearing, they appeared as a lump sum with no identification or itemization of specific costs. On review, we have no way of knowing what particular costs are being imposed and whether the lump sum includes improper institutional costs. *Kaess v. State,* 748 P.2d 698, 702–03 (Wyo. 1987). We find that the trial court erred in the manner in which it imposed costs of the prosecution as part of Juarez's sentence, and we strike those costs from the judgment and sentence without remand. *Keller v. State,* 771 P.2d at 387.

In summary, we decline to address Juarez's constitutional claims and reverse without remand those portions of the judgment and sentence requiring Juarez to repay the costs of both his public defender's legal services and his prosecution.

■

---

**3.** *Baum v. State,* 745 P.2d 877, 882 (Wyo.1987).

**4.** In *King v. State,* 780 P.2d 943, 958 (Wyo.1989), this court considered a similar constitutional challenge. There, as here, the criminal defendant asserted that W.S. 7–11–505 operated to "chill" the right to plead not guilty. We stated

that such statutes "have consistently been held constitutional as long as they are not construed to authorize assessment of institutional costs," and we rejected the constitutional challenge to that statute.