Kathleen SEATON, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 90–118.

Supreme Court of Wyoming.

May 14, 1991.

Robert A. Hampe, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Karen A. Byrne, Hugh Kenny, Sr. Asst. Attys. Gen., for appellee.

Before URBIGKIT, C.J., THOMAS and GOLDEN, JJ., ROONEY and BROWN, Retired JJ.

URBIGKIT, Chief Justice.

Appellant, Kathleen Seaton, seeks reversal of her larceny conviction under W.S. 6–3–402(b).[1] She argues the district court erred in failing to instruct the jury with specificity on the subject of circumstantial evidence and that the evidence was insufficient to sustain the conviction.

We affirm the conviction on those issues. On our own motion, we have reviewed the judgment and sentence of the district court and find it necessary to strike those portions relating to assessed costs and monetary penalties which cannot be sustained by the record on appeal.

## I.

### FACTS

Seaton was charged with taking $3,000 worth of traveler's checks from her employer, Travel Management Agency, Inc. (TMA). The record provides no question that Seaton obtained those traveler's checks from her employer's stock, completed the instruments, and negotiated them for cash. The larceny charge addressed contentions that after obtaining the checks, she failed to pay the purchase cost. Eventually, TMA was required to repay American Express. Seaton testified she paid for the traveler's checks with a personal check in the amount of $535 and with cash in the amount of $2,465, and that another employee in the organization took her payment, including her personal check, as well as all other evidence that the sale had been made to Seaton. Her alleged personal check was never negotiated for payment.

Seaton was hired as the manager for TMA's Cheyenne, Wyoming office on September 12, 1988. From the very beginning, Seaton established a pattern of regularly purchasing traveler's checks from her employer including first a $400 purchase on September 16, 1988, $300 on September 23, 1988, $1,200 on September 27, 1988, $600 on October 8, 1988, and $2,000 on October 9, 1988. The disposition of these traveler's checks is not disclosed by the record. However, Seaton began spending traveler's checks totaling $3,000 on October 11, 1988, and it was this last batch of checks for which the criminal charge of non-payment was made. At trial, Seaton testified she used traveler's checks to protect her personal funds from falling into her husband's hands and to prevent him from knowing what she was doing with her own money. As a criminal charge defense, she claimed she paid for the last $3,000 worth of traveler's checks (and presented evidence as to how she obtained the cash to purchase

---

1. W.S. 6–3–402(b):

 A bailee, a public servant as defined by W.S. 6–5–101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own use or another's use is guilty of larceny.

 W.S. 6–3–402(c)(i) provides that larceny is a felony punishable by imprisonment for not more than ten years and/or a fine of $10,000 if the value of the property taken is $500 or more.

them). Her theory of defense was that a fellow employee must have taken the money from TMA's cash drawer, to which everyone in the office had access. All other employees denied ever seeing, or taking, the cash about which Seaton testified.

Her testimony included the further statement that the cash laid in the cash drawer "for several days, pretty close to a week," before it disappeared. Seaton also testified that after the disappearance of the money, she spoke to the employee who she suspected of taking the cash. Even though she further testified that the co-worker denied the transaction existed, Seaton never made a report to anyone at TMA or to law enforcement authorities.

## II.

## DISCUSSION

### A. *Circumstantial Evidence Instruction*

Seaton asserts that a separate and distinct circumstantial evidence instruction should have been given in this case because the evidence presented against her was largely circumstantial. Citing *Mulligan v. State*, 513 P.2d 180 (Wyo.1973) [*overruled sub nom. Blakely v. State*, 542 P.2d 857 (1975) ], she proposes that the following instruction should have been given:

> In order to convict on circumstantial evidence, it is necessary not only that the circumstances all concur to show that the defendant committed the crime, but that they all be in consistent [sic] with any other rational conclusion. The evidence must lead to the conclusion so clearly and strongly, where the evidence is purely circumstantial, as to exclude every reasonable hypothesis consistent with innocence.

Seaton concedes that no instruction along these lines was offered in the district court, but claims fundamental or plain error on the part of the district court for failure to have, *sua sponte*, given this instruction. Before we directly answer the issue raised, we must first ascertain whether our plain error test has been met. The test is this:

> "First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced."

*Ramos v. State*, 806 P.2d 822, 827 (Wyo. 1991) (quoting *Bradley v. State*, 635 P.2d 1161, 1163–1164 (Wyo.1981)). *See* W.R. A.P. 7.05.

Putting aside the question of whether Seaton was, indeed, convicted on the basis of circumstantial evidence, this court has long since abandoned the position taken in *Mulligan*. Circumstantial evidence possesses the same stature as direct evidence. *Jozen v. State*, 746 P.2d 1279, 1283 (Wyo. 1987); *Blakely v. State*, 542 P.2d 857, 861–863 (Wyo.1975). The failure to give the proposed instruction does not violate a clear and unequivocal rule of law and, thus, this asserted error is not subject to review under the plain error doctrine. The district court did give a standard jury instruction on the subject of direct and circumstantial evidence.

Seaton does not clearly identify why this case provides a circumstantial evidence conviction concept. A common definition for circumstantial evidence is provided in Black's Law Dictionary 221 (5th ed. 1979), and in pertinent part states:

> Testimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * * The proof of certain facts and circumstances in a given case, from which jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. * * * Indirect evidence.

The only thing circumstantial in evidentiary status here is either the money did not exist or, if it did, how it disappeared. Seaton took the traveler's checks and cashed them for face amount funds. She said that she paid, which was directly de-

nied by the involved fellow worker. She said that she saw the money in the cash drawer, which was also directly denied by the co-worker and other employees. Without question, funds did not reach the employer's depository account. Either Seaton did not pay or, if she did, someone stole the money from the business repository. The direct evidence relative to existence of the payment and the defense was tested and resolved by the resulting jury verdict. Primary relevance by the prosecution in this case was in denial of evidence. *People v. Wright*, 52 Cal.3d 367, 276 Cal.Rptr. 731, 756, 802 P.2d 221, 246 (1990).

## B. *Sufficiency of the Evidence*

 In addition to characterizing the proof as circumstantial, Seaton claims that the evidence was not sufficient to sustain her conviction. "Our standard of review is simple and established when a determination is challenged on the basis of the sufficiency of the evidence. We examine whether the evidence most favorable to the State is sufficient to infer reasonably that a statute was violated as charged." *Rathbun v. State*, 802 P.2d 881, 882 (Wyo.1990). *See Mendicoa v. State*, 771 P.2d 1240, 1243 (Wyo.1989). There are two stages in this process. First, we review the record to examine " 'all the evidence in the light most favorable to the [s]tate * * *;' " and second, after drawing into the open only the evidence adverse to the defendant, we examine whether that evidence permits the jury's conclusion beyond a reasonable doubt that the defendant violated the elements of the statute as charged. *Rathbun*, 802 P.2d at 882–83 (quoting *Mendicoa*, 771 P.2d at 1243).

Seaton claims the State only proved that she was employed by TMA and that she had been unable to get along with either her subordinates or her managerial superiors. On the contrary, that was Seaton's defense, not the State's case. As a part of cross-examination, Seaton brought out testimony that her subordinates had complained to TMA's executives about Seaton's management abilities. Seaton goes on to argue that the State put on all of TMA's other Cheyenne employees and had them testify that they had not taken the traveler's checks and, hence, Seaton must have been the one who did. Again, this was really Seaton's only defense, not the State's theory of the case. Seaton apparently hoped to create a doubt in the minds of the jury as to whether she had paid for the traveler's checks, and then that money, as well as all the other evidence of the sale, was stolen by a fellow employee. Obviously, the jury did not accept the defense as sufficient to create a reasonable doubt.

There is no question that Seaton used the traveler's checks—the principal question is: Did she pay for them? Seaton cites authority for the proposition that opportunity alone cannot serve as evidence of guilt. *King v. State*, 718 P.2d 452 (Wyo.1986). That case is not in point here. In *King*, the defendant was convicted of burglary (including the element of unlawful entry) on the strength of possession of stolen property and the fact that he lived near the site of the burglaries. We held that the fact that King had the opportunity, i.e., was in the vicinity, in the most general sense, was not sufficient to sustain the burglary conviction. The circumstances are considerably different here. Seaton had the opportunity, as did all the other employees. However, Seaton negotiated the purloined traveler's checks, the other employees did not.

Finally, Seaton restates her contention that the only evidence against her was that the traveler's checks were taken and money had not been paid over to American Express. Regularly kept business records of TMA were placed in evidence and those records demonstrated a negative proposition—i.e., the traveler's checks, which were spent by Seaton over the time period of October 11, 1988 through October 19, 1988, never showed up on TMA's sales records, nor was the money for them received or deposited in a bank by TMA. Records from American Express were not placed in evidence, but two TMA employees testified that American Express billed TMA for the traveler's checks spent by Seaton and that was the first notice TMA received that the traveler's checks were missing from their inventory. Thereafter, TMA paid Ameri-

can Express the $3,000 owed for the traveler's checks for which TMA was responsible. The $3,000 in traveler's checks, each bearing Seaton's signature, were also placed in evidence. Every other employee denied any knowledge of the transaction or that the funds had been paid or placed in the cash drawer at the business. There was also no office record posting for the traveler's checks purchase or payment. From this evidence, the jury could reasonably render the verdict that it did.

## III.

## JUDGMENT AND SENTENCE FOR COSTS AND RESTITUTION

We are faced with an additional problem regarding the sentence which was entered.[2] Seaton's sentence provided for penitentiary confinement for a period of not less than three years nor more than five years which was suspended for a period of five years probation, with probation to include the following terms:

6. The Defendant shall maintain full time employment and pay just debts;

7. The Defendant shall make complete restitution to the victim(s), in the amount of $3,000.00, as reflected in the Presentence Investigation Report, for any items not returned or damage done as a result of this offense;

8. The Defendant shall repay the State of Wyoming, Public Defender's Office, for all expenses and services provided by [her] appointed attorney, Bernard Q. Phelan, in the amount of $1,799.45, pursuant to the State of Wyoming Public Defender's standard fee schedule, as required by W.S. 7-6-106(d), 1977 Republished Edition;

9. The Defendant shall repay the State of Wyoming, District Attorney's Office, for all expenses incurred as to the cost of prosecution, such amount to be $2,244.68, pursuant to the State of Wyoming District Attorney's standard fee schedule, as required by W.S. 7-11-516, 1977 Republished Edition;

2. Although appellate counsel did not present this error, an illegal sentence can be corrected at any time. W.R.Cr.P. 36. In the interest of

10. The Defendant shall pay to the Victim's Compensation Fund, as required by W.S. 1-40-119(a), 1977 Republished Edition, the total sum of $1,500.00 by cash, certified check or money order payable to the Clerk of the District Court, Third Floor, County Building, Cheyenne, Wyoming. The Defendant shall be required to pay the amount of $50.00 within ten (10) days from the date first appearing on this Order. The remaining balance of $1,450.00 shall be paid according to condition eleven (11) of this Order;

11. The defendant shall pay all of the above restitution amounts, as to conditions seven (7), eight (8), nine (9) and ten (10), according to a plan to be prepared by the Department of Probation and Parole. This restitution plan shall have all amounts due and owing paid within her probationary period.

### A. *Restitution*

This record reveals a 40-year-old unemployed divorced female with a 15-year-old son. According to the last entry of the record which post dates entry of the sentence, she had lost her house, her car and had sold most of her furniture to live and was without real income and trying to get public assistance for subsistence funds. Medical expenses were unpaid as were other bills and expenses. She had stated at sentencing that she could try to pay $50.00 a month for restitution. She had also stated to the probation officer that she expected to develop an income of $20,000.00 a year in the business of restoration of antiques.

Restitution was clearly appropriate and the question presented is whether sufficient proof of the amount or the capacity to pay is demonstrated. This court can find a realistically established basis in the record to approve the restitution requirement without any additional assessment of capacity to pay *at this time*. W.S. 7-9-103 provides:

both judicial economy and further direction for court action, we will consider the problem presented by this record.

(a) If the court requires restitution of a defendant, then at the time of sentencing it shall fix a reasonable amount as restitution owed to each victim for actual pecuniary damage resulting from the defendant's criminal activity, and shall include its determination of the pecuniary damage as a special finding in the judgment of conviction.

(b) To satisfy the order, the clerk, upon request of the victim or the district attorney, may issue execution against the defendant for any assets including wages subject to attachment in the same manner as in a civil action.

(c) The court's determination of the amount of restitution owed under this section is not admissible as evidence in any civil action.

The statutory system requires the preparation of a plan through W.S. 7–9–104 and whatever may have occurred by this date is not included in this record. The last event revealed by the record regarding the payment plan was entry of the judgment and sentence.

We find sufficient, even though perhaps minimal, compliance with the special finding requirement of W.S. 7–9–103 and, absent statutory requirement at the time of sentencing for the district court to determine ability to pay, we affirm the restitution requirement. Enforcement of restitution after the sentence under the Wyoming statute becomes an executory proceeding from which further hearings may be held and a subsequent right of appeal created. Those issues are not presented by this record. *See* W.S. 7–9–104 through 7–9–110. Obviously, the convicted person cannot be subjected to revocation of probation for non-compliance with restitution unless, in accord with the statutes, a plan has been developed which demonstrates the required criteria including capacity to pay. In the absence of capacity to pay with reasonable effort made, imprisonment for debt occurs in contravention of Wyoming Const. art. 1, § 5.

B. *Victim's Compensation Fund*

■ The $1,500.00 assessment in the provision of paragraph 10 of the judgment and sentence causes our greater concern. W.S. 1–40–119 provides:

(a) In addition to any fine or other penalty prescribed by law, a defendant who pleads guilty or nolo contendere to, or is convicted of, the following criminal offenses shall be assessed a surcharge of not less than fifty dollars ($50.00):

[Designated offenses]

(b) The surcharge enumerated in subsection (a) of this section shall be imposed upon any defendant for whom prosecution, trial or sentence is deferred under W.S. 7–13–301 and 7–13–302 or who participates in any other diversion agreement.

(c) Under no circumstances shall a court fail to impose the surcharge required by subsections (a) and (b) of this section.

(d) The surcharge shall be paid within ten (10) days of imposition. Failure to comply is punishable as contempt of court. Contempt proceedings or other proceedings to collect the surcharge may be initiated by the prosecuting attorney or by the court on its own motion.

(e) Monies paid to the court by a defendant shall be applied to the surcharge before being applied to any fine, penalty, cost or assessment imposed upon the defendant. The proceeds from the surcharge imposed by this section shall be remitted promptly by the clerk of the court to the commission for deposit in the account.

In seeking an appropriate and realistic application of the statute, we would recognize its provisions were intended by the legislature to be mandatory in both assessment and payment. We will confine our analysis for this decision to the judgment and sentence presented in this case and await briefing and oral argument in future cases to address any broader issue of the possible assessment of statutorily unlimited amounts to be deposited as a state funding mechanism. Here, we only address the statutorily limited time for payment provided in W.S. 1–40–119(d) of ten days. The

vice of that portion of the judgment and sentence in this case is the provision for the payment of $1,450 later than ten days of imposition "according to a plan to be prepared by the Department of Probation and Parole." Subsection (d) of the statute contains no provision vesting discretion in the sentencing court with respect to extending the time for payment of this surcharge. Since the district court, in this instance, must have determined that Seaton could pay no more than $50 within the ten day period, we would find the balance of $1,450 to be thereafter paid according to an executive agency plan to constitute an unlawful imposition and statutorily unauthorized surplusage. Wyo. Const. art. 1, § 14. Courts can only impose those sentences authorized by the legislature. *Williams v. State*, 692 P.2d 233 (Wyo. 1984); *Sorenson v. State*, 604 P.2d 1031 (Wyo.1979).

### C. *Costs of Prosecution*

█ The sentence then leaves remaining provisions for "cost of prosecution" and repayment of expenses and services of the public defender. We will first address in this section the cost of prosecution.

The judgment and sentence cited W.S. 7–11–516 (1977 Republished Edition) as statutory authority for assessment. That section of the statute no longer exists and, in the context of the change, the provision was amended by 1987 Wyo.Sess.Laws, ch. 126 to add felonies to its cost assessment provision theretofore applying only to misdemeanors. The statute then emplaced and now in existence has neither provided for a schedule nor assessment of anything except the normal losing litigant's cost. *Kaess v. State*, 748 P.2d 698 (Wyo.1987). This would not include institutional costs. *Johnson v. State*, 532 P.2d 598 (Wyo.1975); *Arnold v. State*, 76 Wyo. 445, 306 P.2d 368 (1957).

The only difference in application of the present W.S. 7–11–505, which replaced W.S. 7–11–516, when applied and defined in *Kaess,* is a statutory change to add felonies to the previously provided misdemeanor coverage. The present statute provides:

"Payment of the costs of prosecution may be added to and made a part of the sentence in any felony or misdemeanor case." W.S. 7–11–505.

In *Kaess* in identifying the scope of the statute, we stated:

Cursory consideration of the misdemeanor [and now felony] cost assessment statute was given in *Johnson v. State*, 532 P.2d 598 (Wyo.1975), where this court determined that (1) jury and bailiff expenses could not be taxed as costs, and (2) the expense of expert medical witnesses could only be charged at the statutory rate of $25. That decision left open the possibility of additional payments for three further witnesses. The tenor of the case was to follow the standards applicable to civil cases. * * * Until the legislature provides some statutory differentiation, or this court adopts special provisions within the rules of criminal procedure, general standards as applicable to costs in civil cases will be applied, including witness fees, service fees, and fees for depositions when actually used, since no basis exists for differentiating assessable costs in civil and criminal cases. See Rule 54(d), W.R. C.P.; Rule 1, W.R.C.P.; Rule 20(a), W.R. Cr.P.

Certain principles, as well as problems, can be extrapolated from the Wyoming criminal and civil cost-assessment cases.

(a) Costs may only be assessed as statutorily authorized. * * * The civil costs statute, § 1–14–124, W.S.1977, affords no itemization detail, nor does any procedural rule. Even in the civil cases, what may be assessed as costs against the loser is "not very clearly established by either statute or rule," * * *.

(b) The standard generally applied is the amount statutorily allowed for witness fees and travel expenses duly claimed and supported by evidence. Section 1–14–102, W.S.1977, 1987 Cum.Supp. * * *

(c) Institutional costs resulting from court, jury and bailiff expenses as exam-

ples, cannot be charged.[3]

*Kaess*, 748 P.2d at 703. Proof sufficient to sustain any prosecutorial cost assessment is not provided in this record.

D. *Reimbursement for Legal Services Provided by the Public Defender's Office*

■ The applicable statutes relating to costs of defense reimbursement for public defender services provide:

(a) The determination of whether a person covered by W.S. 7–6–104 is a needy person shall be deferred until his first appearance in court or in a suit for payment or reimbursement under W.S. 7–6–108, whichever occurs earlier. Thereafter, the court shall determine, with respect to each proceeding, whether he is a needy person.

(b) In determining whether a person is a needy person and in determining the extent of his inability to pay, the court shall consider the standards promulgated pursuant to W.S. 7–6–103(c)(vii). Release on bail does not necessarily prevent a person from being determined to be needy. In each case the person, subject to the penalties for perjury, shall certify in writing, or by other record, the material factors relating to his ability to pay as the court prescribes.

(c) To the extent that a person receives the services set out in W.S. 7–6–104, and is able to provide some funds toward the costs associated with such services, the presiding court may order the person to reimburse the state for the cost of the services provided. In making such an order, the court shall consider the financial resources of the person and the expenses and services provided in light of the state public defender's standard fee

schedule. Where a person is initially provided with counsel pursuant to W.S. 7–6–105(a), but subsequently retains private counsel, the court may order the person to reimburse the state for the services already provided.

(d) If the court orders probation before sentence, suspended sentence or probation, the court shall order the needy person as a condition of sentence or probation to repay the state for expenses and services provided by appointed attorneys pursuant to the state public defender's standard fee schedule.

W.S. 7–6–106; and

(a) Within six (6) years after the date the services were rendered, the attorney general may sue on behalf of the state to recover payment or reimbursement from each person who has received legal assistance or other benefits under this act.

(b) Amounts recovered under this section shall be paid into the state general fund.

W.S. 7–6–108.

The validity of reimbursement for Seaton is adversely determined by our decisions in *King v. State*, 780 P.2d 943, 957 (Wyo.1989) and *Keller v. State*, 771 P.2d 379, 387 (Wyo.1989). There are two problems created by statute application for validation of the sentence provision. In first instance, there is nothing of record demonstrating that the public defender has adopted a validly computed "standard fee schedule." This record also provides no evidence demonstrating how the defense attorney fee reimbursement charge was computed, including hourly rate, time or any lode star itemization. However, a more serious difficulty exists. We stated in *Keller*, 771 P.2d 379, and restated even more forcefully in *King*, 780 P.2d at 957 and now repeat

---

**3.** In *Kaess*, 748 P.2d at 703–04, we concluded:

To be repetitive, the subjects of costs of prosecution and defense, which are confused structurally and constitutionally, may deserve consideration by the legislature, and by instrumentalities of the judiciary such as the rules advisory committee under the mandate of § 5–2–117, W.S.1977.

The aspiration may remain unresolved, but current rules committee activities which are presently underway may provide some solid

progress in this difficult and confusing area of the determination of reimbursable costs by the loser to the successful litigant.

Prosecutorial costs since that case have been revisited in *King v. State*, 780 P.2d 943 (Wyo. 1989), with a consistent result. Specifically, *King* recognized "that statutes such as § 7–11–505, imposing liability for prosecution costs, have consistently been held constitutional as long as they are not construed to authorize assessment of institutional costs." *Id.* at 958.

emphatically, "the district court [can] not order reimbursement without first determining the defendant's ability to pay." W.S. 7–6–106(c) states in pertinent part:

> [T]he court shall consider the financial resources of the person and the expenses and services provided in light of the state public defender's standard fee schedule.

*Cf. Burke v. State*, 746 P.2d 852 (Wyo. 1987), decided under the law that existed prior to the 1987 revision. *See also Phillips v. State*, 553 P.2d 1037, 1041 (Wyo. 1976) for a discussion of ability to pay any public defender reimbursement determination.

## IV.

## CONCLUSION

We affirm the conviction and the resulting probation sentence. We affirm the requirement for restitution and affirm a payment of only $50.00 payable to the Victim's Compensation Fund. Assessment of prosecutorial costs and reimbursement for the public defender are reversed since inadequately supported by proper evidence on this record to establish any factually computed amount or current ability to pay.

ROONEY, (Retired), filed a specially concurring opinion.

ROONEY, Justice, Retired, specially concurring.

I concur, but I do so with reference to the requirement for payment of $50 to the Victim's Compensation Fund only because the order for payment was not challenged either here or in the district court—the reason for which we did not address the issue in *Hyde v. State*, 769 P.2d 376 (Wyo. 1989).